UNITED STATES of America,
Plaintiff–Appellee,

v.

Samuel William DONAGHE,
Defendant–Appellant.

No. 90–30105.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1990.

Decided Jan. 31, 1991.

As Amended on Denial of Rehearing
April 3, 1991.

Sheryl Gordon McCloud, Seattle, Wash., for defendant-appellant.

Kurt Hermanns, Asst. U.S. Atty., Tacoma, Wash., for plaintiff-appellee.

Before FLETCHER, FARRIS and BOOCHEVER, Circuit Judges.

FLETCHER, Circuit Judge:

Appellant appeals the revocation of his probation and the district court's order that the Bureau of Prisons conduct a mental and physical evaluation of appellant pursuant to 18 U.S.C. § 3552(b). We affirm.

## I. FACTS

In November of 1988 appellant was convicted in Northern California of attempting to obtain a passport in a false name, in violation of 18 U.S.C. § 1542. He was placed on probation for three years. His probation order imposed the following special conditions:

1. That if required by the probation officer he participate in a program of psychotherapy;

2. That he not apply for a U.S. Passport, or a passport from any other country, without Court approval;

3. That he not order, receive or have in his possession at any time any pictures, materials, or artifacts relating to child pornography;

4. That he submit to search and seizure by law enforcement officers and/or the probation officer at any time;

5. That he not have any association or relationship with any minor without the express consent of the minor's parent(s) or guardian(s) and the probation officer; and

6. That he not obtain any employment where he has direct or indirect responsibilities for minors without prior approval by the probation officer.

In the following year, appellant's probation supervision was transferred from California to the Western District of Washington in Tacoma. On February 13, 1990, in a search of appellant's home, his probation officer found evidence that appellant was engaged in a business bringing foreign exchange students, most of whom were minors, to the United States. A weapon was also found by another probation officer in appellant's home.

On February 14, 1990, the government filed a petition to show cause why Donaghe's probation should not be revoked. On February 23, 1990, appellant waived the probable cause hearing and his counsel moved to withdraw from the case. The motion was granted and the court appointed new counsel for appellant.[1] A probation revocation hearing was scheduled for March 1, 1990.

On February 28, 1990, appellant asked Walter Palmer to represent him. At the parole revocation hearing the next day, Mr. Palmer informed the court that he had been retained by appellant only the day before and could proceed with the case only if the court would grant a continuance. He indicated that appellant's court-appointed counsel should proceed with the case if such a continuance were not granted. The

---

**1.** This motion was sealed by the court.

district court denied the continuance and the hearing proceeded with appointed counsel representing appellant.

The government called appellant's probation officer as its only witness. He described the business documents uncovered in the search of appellant's home and indicated that a weapon had also been found. He stated that appellant had not informed him of his exchange-student business.

Appellant's appointed counsel, apparently well-versed in the case, played an active role in the proceedings. He objected to testimony and extensively cross-examined the government witness.

The district court revoked appellant's probation. It sentenced appellant to five years of imprisonment and three years of supervised release and fined him $2,000.00. It also ordered the Bureau of Prisons to conduct a physical and mental evaluation of appellant, to be completed within sixty days.

A short time after the hearing, the Thurston County Superior Court took custody of defendant pursuant to a writ *ad prosequendum*. The mental evaluation to be conducted by the Bureau of Prisons was stayed. He has since pled guilty to two counts of rape in state court and, at the time of argument in this case, was awaiting sentencing for those convictions.

## DISCUSSION

This case potentially raises several issues. As a threshold issue, we must determine whether we have subject-matter jurisdiction on appeal. On the merits, appellant contends that the district court abused its discretion by denying his request for a continuance. He also contends that his rights under Fed.R.Crim.P. 32.1(a)(2)(B) were violated by testimony of the probation officer and the government's failure to provide him with the probation officer's notes. Finally, appellant argues that the district court erred when it committed him to the Bureau of Prisons for a sixty-day period for a mental and physical evaluation pursuant to 18 U.S.C. § 3552(b).

### A. *Appellate Jurisdiction*

■ Appellant was sentenced under 18 U.S.C. § 3552(b) to a provisional sentence of five years of imprisonment and ordered committed to the Bureau of Prisons for further mental and physical examination. As required under § 3552(b) this study was limited to sixty days; after its completion appellant was to return to the district court for further proceedings and imposition of a final sentence. Because appellant has not yet received a final sentence under § 3552(b), it has been suggested that this court does not have jurisdiction over this appeal. *See* 28 U.S.C. § 1291 (1990). We disagree.

In *Corey v. United States*, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963), the Supreme Court addressed the issue of appellate jurisdiction over cases in which a defendant had been sentenced pursuant to former 18 U.S.C. § 4208(b), the predecessor statute to § 3552(b). Section 4208(b), like § 3552(b), utilized a two-step sentencing procedure. The Court held that an appeal could be taken after the first sentence had been imposed by that statute and the defendant had been ordered committed to the Bureau of Prisons for study. The Court emphasized that at this stage of the proceedings "[t]he litigation is complete as to the fundamental matter at issue—'the right to convict the accused of the crime charged in the indictment'" and that a sentence had been imposed. 375 U.S. at 174, 84 S.Ct. at 302, (quoting *Heike v. United States*, 217 U.S. 423, 429, 30 S.Ct. 539, 541, 54 L.Ed. 821 (1910)). The Court noted that a different result could lead to "the imposition of ... a mandatory three- or six-month term of imprisonment before the defendant could file an appeal," a result that "might raise constitutional problems of significant proportions." *Id.*, 375 U.S. at 173, 84 S.Ct. at 302.

Although there are several differences between the former statute, § 4208(b), and the current one, § 3552(b), the rationale that drives *Corey* controls the present

case.[2] Like the defendant in *Corey*, appellant's guilt has been determined and a sentence, albeit one that is subject to change, has been imposed. Like the defendant in *Corey*, appellant is subjected to several months of incarceration before review of his sentence by the district court.

Congress has provided in § 3552(b) that the initial sentence imposed "shall be treated for administrative purposes as a provisional sentence." Regardless of its purposes "administrative" or otherwise, the initial sentence is a sentence and appellant is incarcerated pursuant to it.[3]

**B.** *Appellant's request for a continuance*

■ The district court's decision to deny appellant's request for a continuance is reviewed for abuse of discretion. *United States v. Studley*, 783 F.2d 934, 938 (9th Cir.1986). However, the district court's exercise of its discretion must be evaluated in light of concerns that a denial of a continuance may implicate sixth amendment rights.[4] In this situation we have held that the district court's decision must be reviewed by balancing several factors. *United States v. Kelm*, 827 F.2d 1319 (9th Cir. 1987). These factors include "whether the continuance would inconvenience witness-es, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay; whether the delay is the defendant's fault; and whether a denial would prejudice the defendant." *Id.* at 1322, n. 2. We pay particular attention to whether the defendant's right to representation and a fair proceeding have been violated.

The appellant's request for a continuance was not made known to the court until after the hearing had already commenced. The court, the government and its witness, and appellant's previously appointed counsel stood ready and well-prepared to proceed with the hearing. Furthermore, appellant's retained counsel indicated to the court that the appointed counsel should proceed with the case if a continuance were not granted. Under these circumstances we find no abuse of discretion occurred.[5]

**C.** *Violations of Fed.R.Crim.P. 32.-1(a)(2)(B).*

■ Appellant claims that violations of Fed.R.Crim.P. 32.1(a)(2)(B) deprived him of due process.[6] First he argues that the court erroneously permitted the probation officer to testify regarding appellant's business, information that had not been

---

**2.** In *United States v. Muther*, 912 F.2d 1371 (11th Cir.1990) the Eleventh Circuit reached a different result, finding that the differences between former § 4208(b) and § 3552(b) render *Corey* inapplicable. Specifically, the Eleventh Circuit noted that § 3552(b) provides for a two-tiered sentencing system whereby a provisional sentence is imposed when a defendant is committed to the Bureau of Prisons and a final sentence determined after the study is received. Under § 4208(b) the first sentence was simply modified after the study was completed. The court also emphasized that while the period of study under § 4208(b) could range from 3 to 6 months, § 3552(b) permits a period of 60 to 120 days.

**3.** One of the issues in the current case highlights the prejudice that could result to appellant if he were not permitted an appeal at this stage: his contention that the district court erred by ruling that the sentencing study be completed within the Bureau of Prisons rather than in the local community would be moot if appeal were delayed.

**4.** The sixth amendment guarantees a defendant the right to representation by retained counsel in a criminal case. *United States v. Kelm*, 827 F.2d 1319 (9th Cir.1987). A probation revocation hearing in which a sentence is determined has been held to be subject to the sixth amendment's requirements. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (deciding that a sixth amendment right to appointed counsel extends to such hearing).

**5.** In a supplemental submission, appellant cited *United States v. Walker*, 915 F.2d 480 (9th Cir. 1990), in which this court reversed the trial court's refusal to substitute counsel on the morning of the trial. *Walker*, however, does not support appellant. Walker had requested substitution of counsel by a letter dated a week prior to his hearing, and both Walker and his attorney testified to an irreconcilable breakdown in the attorney-client relationship about which the judge did not make adequate inquiry.

**6.** Fed.R.Crim.P. 32.1(a)(2)(B) requires that "[the] person shall be given ... disclosure of the evidence against the person".

provided to defense counsel. Second, he argues that the prosecution failed to make file notes of the probation officer's contacts with him available to the defense.

The government, however, has established that the only records not made available were the probation officer's notes reflecting office visits by the probationer. The government did not offer any evidence in its case in chief from these records, nor did it introduce them into evidence, although it acknowledged their existence and the fact that they had not been turned over to the defendant's counsel. The only use of these records occurred on cross-examination, when defense counsel asked questions of the probation officer that required him to refer to these records.[7] We have held that failure to allow a probationer to view his probation file prior to a revocation hearing violates neither Fed.R.Crim.P. 32.-1(a)(2)(B) nor due process if the government does not use it as evidence against the probationer. *United States v. Tham*, 884 F.2d 1262, 1265 (9th Cir.1989). In this

case, such evidence was not used by the government against appellant. Moreover, nothing occurred here that was even remotely unfair to Donaghe. His counsel opened the inquiry and was furnished candid unsurprising answers, none of which added to or detracted from the evidence that established the parole violations. Full cross-examination of the government witness went forward unimpeded. *See id.*

### D. *Psychiatric study of appellant pursuant to 18 U.S.C. § 3552*

■ Under the terms of 18 U.S.C. § 3552, a presentence psychiatric study of a defendant such as the one ordered here, "shall be conducted in the local community ... unless the sentencing judge finds that there is a compelling reason for the study to be done by the Bureau of Prisons or there are no adequate professional resources available in the local community to perform the study." The district court found that compelling reasons for having

---

**7.** Defense counsel cross-examined the probation officer as follows:

Q. And he reported on a monthly basis as required by you; is that correct?
A. Correct.
Q. And the monthly reports that were submitted, he did indicate that he was self-employed, did he not?
A. Correct.
Q. And you didn't inquire any further in regard to the form of the self-employment, did you?
A. Yes, I did.
Q. When did you do that?
A. During the office visits that have already been discussed.
Q. On every single occasion?
A. I would have to review the chrono entries.
Q. Well, if you would, please.
A. The office visit of 3–31–89 we basically discussed his association with the Boy Scouts. There isn't an indication of discussion of employment. Next office visit 7–10–89 we discussed business opportunities. The next office 8–7–89 we again discussed employment with Continuous Gutters. The next home visit, which was at his residence, 8–30–89 we discussed employment, that being the gutter company and the restaurant.
The next home visit on 10–25–89 we discussed his trucking business. The next visit office visit 12–4–89, when I had contact with him—he came in one other time. I was not—I was in court, I did not speak with him. The next office visit in

which I had contact was 12–4–89. We discussed the operation of his truck company. 1–2–90, January 2nd of '90, we discussed the trucking business.
Q. With regard to that statement, Mr. Donaghe in fact is the owner of a truck at this point in time, is he not?
A. That's my understanding.
Q. Did you make any attempts to verify any of the other employments?
A. Yes.
Q. And were you able to verify that he was in fact employed by those people?
A. He provided information regarding the Cojo Restaurant but that was a franchise. He wasn't actually employed, it was a franchise situation.
Q. So he was looking for employment or perhaps purchasing into a franchise at that point in time?
A. Correct.
Q. And in regard to the other mentions regarding employment, where he may have come up with companies, once again, what he was stating to you was that he was seeking employment; correct?
A. As—as relates to the trucking business?
Q. As relates to those various other companies. Or was he ever in fact employed by those companies?
A. He indicated he was employed by the gutter company, yes.
Q. And did you check with the gutter company to ascertain whether he was in fact employed?
A. Per his request, I did not.
Tr. at 37–39.

the Bureau of Prisons conduct the study existed.[8]

There are no cases directly addressing what amounts to "compelling circumstances" under § 3552. The court found that appellant's release into the local community to have such a study performed presented a risk of flight. We conclude that such a risk of flight would be a compelling circumstance under § 3552. The nature of his underlying crime (passport fraud) lends some support to this finding. The record suggests that appellant may have been attempting to flee the country when he applied for the passport in a false name due to charges of sexual abuse brought by his nephew. Furthermore, appellant, at the time, was in the process of changing his and his family's legal name. He also used an alias on the business papers seized by the probation officer. Although appellant had consistently checked in with probation authorities and lawfully transferred his probation from California to Washington, the district court's conclusion that he represented a flight risk is not clearly erroneous.

We conclude that the district court's finding that these circumstances presented a compelling reason for the study to be done by the Bureau of Prisons is not clearly erroneous. The possibility that appellant might leave the jurisdiction before the study and sentencing are completed are substantial concerns.

AFFIRMED.

---

**8.** The court stated in relevant part: "I think the way the defendant has moved around, from looking at the record in this case, the filing of the false passport, obviously, by own words, trying to get out of the country, and for the underlying reasons that he wanted to get out of the country, by his own statements, and here they transfer probation to the Western District of Washington from the Northern District of California, I think I'm going to keep it in the federal system." (Tr., pp. 53–54).