**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David GUARDINO, Defendant–Appellant.**

**Nos. 91–5552, 91–6423.**

United States Court of Appeals, Sixth Circuit.

Submitted and Argued June 16, 1992.

Decided Aug. 14, 1992.

Ed Schmutzer, Asst. U.S. Atty. (briefed and argued), Jerry G. Cunningham, U.S. Atty., Office of the U.S. Atty., Knoxville, Tenn., for U.S.

David Guardino, pro se.

Tim S. Moore, Newport, Tenn. (briefed and argued), for defendant-appellant.

Before: KEITH and RYAN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

RYAN, Circuit Judge.

These are consolidated appeals by defendant David Guardino from decisions of the district court denying Guardino's motions to correct his sentence by reducing the amount of the restitution ordered, No. 91–5552, and to direct the Bureau of Prisons to produce a document, No. 91–6423. We reverse the denial of Guardino's restitution motion, and affirm the denial of the document production motion.

## I.

Guardino is a "telephone psychic" who went astray. Clients to whom Guardino gave advice often elected to pay for the consultation by authorizing Guardino to make a charge on their credit cards. Guardino, however, often charged the unsuspecting clients for more than the cost of the consultation. Subsequent events revealed that Guardino's psychic powers apparently had their limits: he failed to foresee a successful federal criminal investigation into his business practices.

In October 1986, a federal grand jury in Nevada indicted Guardino on nineteen counts of knowingly, with intent to defraud, using unauthorized access devices to obtain things of value, in violation of 18 U.S.C. § 1029(a)(2). The indictment alleged that in 1985 Guardino made unauthorized charges on nineteen different credit cards.

The case was later transferred to the Eastern District of Tennessee. In June 1988, Guardino executed a memorandum of plea agreement, which provided, in part:

The defendant has agreed to enter pleas of Guilty to Counts I and II of the Indictment.

The defendant has further specifically agreed that he shall be liable for, and will make, full restitution on and as to all counts of the Indictment, even those which will be dismissed as part of these negotiations. . . .

For its part, the prosecution dismissed Counts III through XIX. The amount of the loss alleged in Counts I and II totaled approximately $11,940; the loss alleged in all nineteen counts totaled approximately $94,350. In September 1988, the district court accepted Guardino's guilty plea.

In January 1989, the district court sentenced Guardino to serve a period of probation of five years and to make restitution of $94,350. The court ordered a payment schedule requiring Guardino to pay $3000 on February 1, 1989; $3000 on March 1, 1989; and the balance on April 1, 1989.

As of April 1989, Guardino had paid only $3000 of the restitution ordered. When the government petitioned to revoke probation, Guardino paid an additional $3500, but failed to pay any further restitution after April. In October 1989, after three hearings, the district court revoked Guardino's probation and sentenced him to a five year term of imprisonment on each of the two counts of his conviction, to be served concurrently.

Guardino did not appeal the probation revocation but, instead, filed a number of *pro se* motions. In October 1990, he filed a motion, pursuant to Fed.R.Crim.P. 35, to amend judgment "so that restitution is imposed only for the counts for which the defendant was found guilty." The district court denied this motion on November 19, 1990 and Guardino filed a notice of appeal from the denial on December 10, 1990 (No. 91–5552).

Some time after Guardino's incarceration began, he learned of the existence of a document apparently authored by James Kelly, the probation officer assigned to Guardino's case. In September 1991, Guardino moved the district court for production of this document. The court denied the motion on the ground that the court did not possess such a document.

In October 1991, Guardino filed another, slightly different motion, pursuant to Fed. R.Crim.P. 47. This time, he sought an order directing the Bureau of Prisons to provide a copy of the Kelly document. The district court denied this motion on October 29 and Guardino filed a notice of appeal on November 25, 1991 (No. 91–6423). We

have consolidated the two appeals and we shall address them in turn.

## II.

### Denial of Guardino's Rule 35 Restitution Motion

In his appeal from the denial of his Rule 35 motion relating to the restitution order, Guardino presents four issues, one of which we shall address. It presents a question of first impression for this court:

> Whether the district court erred, as a matter of law, by ordering restitution for losses alleged in counts that had been dismissed pursuant to a plea agreement and for which there has been no conviction.

We conclude that it did, and that the restitution order violated the version of the Victim and Witness Protection Act, 18 U.S.C. § 3663–64 (1988), in effect at the time of sentencing.

### A.

### Jurisdiction

Although Guardino raised only the restitution issue in his Rule 35 motion, he raises three others before this court. The additional issues relate to his guilty plea and the revocation of his probation.[1] After carefully examining the record, we conclude that we have jurisdiction to consider only the restitution issue.

We note that Guardino filed his restitution motion pursuant to the former version of Rule 35, which applies to offenses committed prior to November 1, 1987. Since Guardino committed his fraud in 1985, the former rule applies. It provided that a district court may "correct an illegal sentence at any time." Fed.R.Crim.P. 35(a) (1987). Thus, the district court had jurisdiction to consider Guardino's October 1990 motion to reduce his sentence.

Federal Rule of Appellate Procedure 4 requires a defendant to file a notice of appeal ten days after the entry of an order from which he appeals. The district court may extend this period by thirty days upon a showing of excusable neglect. An appellant's failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *United States v. Hatfield*, 815 F.2d 1068, 1073 (6th Cir.1987).

We note that Guardino has not filed a notice of appeal from either the January 1989 judgment entered pursuant to the guilty plea or the October 1989 judgment entered pursuant to the probation revocation; the only notice of appeal filed related to the district court's November 1990 order denying his Rule 35 motion. We are, therefore, without jurisdiction to consider the arguments related to Guardino's guilty plea and probation revocation.[2]

This court does, however, have jurisdiction to consider the restitution issue because Guardino's appeal from the Rule 35 ruling was timely.[3]

### B.

### Restitution Based on Dismissed Counts

Guardino argues that his sentence was improper because it required him to pay

---

1. Guardino actually filed two sets of briefs in this case, one set *pro se* and the other set by appointed counsel. In his *pro se* briefs, Guardino contests the restitution order and also claims that his guilty plea of January 1989 was not voluntary.

   In the appointed counsel brief, Guardino contends that the district court abused its discretion by revoking his probation, and he further argues that his due process rights were violated when the district court failed to give him notice that it was going to consider an alleged probation violation.

2. While this court recognizes that Guardino proceeded *pro se* when he filed his October 1990 restitution motion, we note that he was represented by retained counsel—usually two attor-

neys—from the time of his plea negotiations in June 1988 until his probation revocation in October 1989. We, therefore, do not view the repeated failures to file the requisite notices of appeal with the indulgence this court sometimes affords to *pro se* litigants.

3. The district court denied Guardino's motion on November 19, 1990. Guardino filed his notice of appeal on December 10, twenty-one days after the order. Accompanying his notice, Guardino filed a motion to extend the time for filing a notice of appeal to December 12. The district court granted this motion, thus extending to December 12 the time for Guardino to perfect his appeal. Therefore, the December 10 notice was timely.

restitution for losses alleged in counts of the indictment to which he did not plead guilty and of which he was not convicted. We agree and reject the government's position that Guardino's plea agreement authorized the restitution ordered.

### 1.
### Applicable Restitution Statute and Standard of Review

At the time of Guardino's sentence, two different statutes permitted restitution orders. The first is the Federal Probation Act (FPA), 18 U.S.C. § 3651 (1982), *repealed by* Pub.L. No. 98–473, § 212(a)(2), 98 Stat.1987 (1984). Although the Sentencing Reform Act of 1984 repealed the FPA, the FPA remains potentially applicable to offenses committed prior to November 1, 1987.[4] Since Guardino committed his offenses in 1985, the FPA could conceivably apply. The second statute is the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663–64 (1988).

■ The district court did not indicate under which statute it ordered restitution. Nevertheless, in situations such as this, the appellate court should assume that the trial court ordered restitution under the VWPA. *United States v. Padgett*, 892 F.2d 445, 448 (6th Cir.1989). Thus, we look to the VWPA to determine whether the restitution imposed by the district court on Guardino was permissible.

■ The VWPA became effective on January 1, 1983. After a minor amendment in 1986, it provided:

The court, when sentencing a defendant convicted of an offense under [Title 18 of the United States Code] ... may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense.

18 U.S.C. § 3663(a)(1) (1988).[5] This version was in effect at the time of Guardino's sentencing in January 1989. Although Congress amended the VWPA in November 1990, the amendment does not apply to Guardino.[6]

■ We take this opportunity to clarify the standard of review applicable to a restitution order pursuant to the VWPA and hold that review is bifurcated. We review *de novo* whether the order is permitted under law. *United States v. Badaracco*, 954 F.2d 928, 942 (3d Cir.1992). If we conclude that it is, we then review the amount ordered under the abuse of discretion standard. *United States v. Joseph*, 914 F.2d 780, 783 (6th Cir.1990). In this case, Guardino contends that the applicable law, the VWPA, did not permit the district court to order restitution for counts of the indictment of which he was not convicted and which were dismissed. Since this is a question of law, we review it *de novo*.

### 2.
### Scope of Restitution Orders under the Pre–Amendment VWPA

In *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990),

---

4. The effective date of the repeal of the FPA is the same as the effective date of application the Sentencing Guidelines, November 1, 1987. Pub.L. No. 98–473, § 235(a)(1), 98 Stat. 2031 (1984), *amended by* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985) *and* Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (1987).

5. We note that the VWPA was originally codified as 18 U.S.C. §§ 3579–80. Effective November 1, 1987, Congress redesignated the VWPA as 18 U.S.C. §§ 3663–64 as part of the Sentencing Reform Act of 1984.

In 1986 Congress amended the language of 18 U.S.C. § 3579(a), *redesignated* 18 U.S.C. § 3663(a). Congress substituted the phrase "victim of such offense" for the former phrase "victim of the offense." Pub.L. No. 99–646, § 79(a), 100 Stat. 3619 (1986). Although Guardino com-

mitted his offenses in 1985, we apply the 1986 language, in effect at the time of Guardino's sentencing, to this case. *Hughey v. United States*, 495 U.S. 411, 413 n. 1, 110 S.Ct. 1979, 1981 n. 1, 109 L.Ed.2d 408 (1990). We note, however, that the Supreme Court has held that this minor revision did not change its construction of the statute. *Id.*

6. Congress amended the VWPA in the Crime Control Act of 1990. Pub.L. No. 101–647, § 2509, 104 Stat. 4863 (1990). Congress added a new paragraph to 18 U.S.C. § 3663(a) that provides: "The court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3) (Supp. II 1990).

the Supreme Court considered whether a sentencing court, under the VWPA, could require an offender to pay restitution for acts other than those underlying the offense of conviction and held it could not. The Court reversed a restitution order that required the defendant to pay restitution for counts other than the counts of conviction, holding that the VWPA "authorize[s] an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Id.* at 413, 110 S.Ct. at 1981. While this decision clarified the law concerning the permissible scope of restitution orders, the Court did not explicitly address whether a sentencing court may order restitution beyond the offense of conviction if the defendant agreed to such an order in a plea agreement.

■ Subsequent to *Hughey*, in November 1990, Congress amended the VWPA to allow a plea agreement to determine restitution. *See supra* note 6. However, this amendment does not govern Guardino's sentencing, since the district court sentenced Guardino in January 1989 well before the amendment. The date of sentencing, not the date of decision, determines the applicable law. *United States v. Arnold,* 947 F.2d 1236, 1237 (5th Cir.1991).

The district court held that *Hughey* is distinguishable because

> Guardino, unlike defendant Hughey, signed a written contract in which he agreed to make restitution on all counts "even those which will be dismissed as a part of these negotiations" in return for the government's agreement to dismiss the remaining counts of the indictment and recommend probation.

Order, 11/19/90, at 1–2 (quoting plea agreement). The district court reached its conclusion without the benefit of any controlling authority from this circuit. In a pre-*Hughey* decision, this court expressly declined to decide whether a plea agreement authorizes restitution beyond the counts of conviction. *United States v. Miller,* 900 F.2d 919, 923 (6th Cir.1990). After *Hughey,* this circuit has not addressed the effect of plea agreements on restitution

orders. In addition, the district court decided the question without the benefit of opinions on the issue subsequently issued in other circuits interpreting the VWPA in light of *Hughey.*

■ After carefully analyzing the language of the VWPA, the Supreme Court's holding in *Hughey,* and recent case law from other circuits, we conclude that the district court erred when it ordered restitution for the seventeen dismissed counts.

■ First, we consider the text of the VWPA and conclude that the plain meaning of pre–1990 amendment section 3663 gives the sentencing court no authority to go beyond the offense of conviction in any situation. It provided that a court, "when sentencing a defendant convicted of an offense ... may order ... that the defendant make restitution to any victim of *such offense.*" 18 U.S.C. § 3663(a) (1988) (emphasis added). This language establishes the general principle for restitution orders, and no other provision carves out an exception based on a plea agreement. The legislative history of the 1990 amendment supports this interpretation of the former section 3663. A House report noted that the 1990 legislation "amends 18 U.S.C. § 3663(a) *to permit* the court to order restitution to the extent that the parties have agreed to restitution in a plea agreement." H.Rep. No. 681(I), 101st Cong., 2d Sess. 177, *reprinted in* 1990 U.S.C.C.A.N. 6472, 6583 (emphasis added). By inference, prior to the amendment, courts were not permitted to order such restitution.

■ Second, we look to the holding in *Hughey.* We believe the Supreme Court strongly implied that a restitution order may not go beyond the counts of conviction under any circumstances. The Court held that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." 495 U.S. at 420, 110 S.Ct. at 1984. The terms of a plea agreement fail to bring an otherwise illegal restitution within the "outer limit" described by *Hughey.*[7]

Finally, we look to recent decisions from other courts. Since *Hughey,* five circuits

---

**7.** We note that one panel of the Seventh Circuit

has held that *Hughey* should not be retroactively

have considered whether a plea agreement gives the sentencing court authority, pursuant to the pre-amendment version of the VWPA, to order restitution for conduct beyond the offense of conviction. Three have expressly held that a plea agreement does not give a sentencing court such authority. The fullest treatment of the issue appears in *United States v. Braslawsky*, 951 F.2d 149 (7th Cir.1992). The Seventh Circuit, in an opinion authored by Senior Judge Engel of this circuit, reversed a sentencing court's restitution order, holding:

> Even if [defendant] had entered into an agreement to pay a specific sum in restitution beyond the damages from the crime of conviction, the district court lacked the authority to issue a restitution order in that amount. Section 3663 and *Hughey* clearly limit the amount of restitution which can be ordered.... Nothing in *Hughey* indicates that the parties could agree to waive the statutory limitation to permit the court to impose an order for a higher amount.

*Id.* at 151. *See also United States v. Young*, 953 F.2d 1288, 1290 (11th Cir.1992); *United States v. Cockerham*, 919 F.2d 286, 288 n. 2 (5th Cir.1990). *But see United States v. Soderling*, 970 F.2d 529 (9th Cir.

1992) (per curiam); *United States v. Marsh*, 932 F.2d 710 (8th Cir.1991).[8]

For these reasons, we conclude that the version of the VWPA in effect prior to the November 1990 amendment does not authorize a district court, in reliance on a plea agreement, to order restitution for counts other than the counts of conviction.

▆▆ Guardino was convicted of two offenses—using credit cards of two different people. The district court thus possessed the authority to order restitution for offenses relating to those two victims; however, the other victims named in the indictment were not victims of the offenses for which Guardino was convicted. Therefore, we reverse the district court's denial of Guardino's motion to correct his sentence and remand the case for resentencing. We also direct the district court to reconsider the revocation of Guardino's probation in light of an appropriate restitution order.

### III.

### Denial of the Rule 47 Production Motion

Guardino also appeals the district court's denial of his motion, under Fed.R.Crim.P.

---

applied. *See United States v. Bennett*, 943 F.2d 738, 741 (7th Cir.1991) (citing *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). We disagree. Initially, we note that a subsequent panel of the Seventh Circuit applied *Hughey* retroactively to vacate a restitution order. *United States v. Braslawsky*, 951 F.2d 149 (7th Cir.1992). We also feel that *Bennett*'s reliance on *Teague* is misplaced. *Teague* prohibited the retroactive application of a new constitutional rule of criminal procedure to an existing conviction. *Teague* does not bar the retroactive application of *Hughey* because, unlike *Teague*, *Hughey* did not announce a new constitutional rule but merely interpreted a statute, and, again unlike *Teague*, *Hughey* did not involve an attack on a conviction but only on a sentence.

**8.** The only decision, even after *Hughey*, expressly holding that courts may order restitution beyond the offense of conviction under the VWPA based on a plea agreement is the decision of the Ninth Circuit in *United States v. Soderling*. *Soderling* relied on a line of Ninth Circuit authority interpreting the FPA prior to *Hughey*, authority which clearly established that the FPA allows restitution for losses stemming from conduct other than the offenses of conviction pur-

suant to a plea agreement. 970 F.2d at 533. *Soderling* felt compelled to apply this line of authority to the VWPA, and concluded that the VWPA, even after *Hughey*, permits sentencing courts to order restitution beyond the counts of conviction.

We find the *Soderling* analysis inapplicable because, prior to *Hughey*, this circuit had not established that plea agreements, under either the FPA or the VWPA, permitted sentencing courts to order restitution beyond the offense of conviction. *Miller*, 900 F.2d at 923. In addition, we feel that *Soderling* gave insufficient consideration to the plain meaning of the former version of the VWPA, the legislative history of the 1990 amendment, and the Supreme Court's guidance in *Hughey*.

The fifth decision to consider this issue was the Eighth Circuit's in *United States v. Marsh*. The author of the plurality opinion affirmed restitution for counts other than the counts of conviction on the basis of the plea agreement. 932 F.2d at 713. However, the other two panel members concurred in the judgment only, indicating that they did not accept the plurality's position that a plea agreement validates a restitution beyond the offense of conviction.

47, to direct the Bureau of Prisons to produce a document assertedly written by Probation Officer James Kelly.[9] The document, although not found in the record, apparently is a draft memo reflecting Officer Kelly's thoughts on Guardino's case. Guardino asserts that the Bureau of Prisons must produce Officer Kelly's memo because it allegedly demonstrates the officer's bias. We conclude that the district court's order should be affirmed.

■ Although the government does not raise a jurisdictional issue, we note that Guardino failed to timely appeal the district court's order. The district court denied Guardino's motion on October 29, 1991, and Guardino filed his notice of appeal on November 25, twenty-seven days after entry of the order. A defendant must file a notice of appeal within ten days of the entry of an order from which he appeals, absent an extension by the district court. The failure of an appellant to file a timely notice of appeal deprives the appellate court of jurisdiction. *Hatfield, supra.* The district court did not extend the time period for appeal. Therefore, Guardino's appeal is not timely.

■ Even if we possessed jurisdiction to consider this appeal, we would find it meritless. Although *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), obligates the government to turn over evidence in its possession favorable to the accused and material to guilt, in this case, the Bureau of Prisons—not the court or the U.S. Attorney—apparently possesses Officer Kelly's memo. Consequently, the document need not be disclosed. *United States v. Zavala*, 839 F.2d 523, 528 (9th Cir.1988). Neither can Guardino find support in Fed.R.Crim.P. 32.-1(a)(2) which requires disclosure, at the time of a probation revocation hearing, of evidence against the probationer. This rule, however, requires the government to disclose such evidence only if it was actually used against the probationer. *United*

*States v. Donaghe*, 924 F.2d 940, 944 (9th Cir.1991); *United States v. Tham*, 884 F.2d 1262, 1265 (9th Cir.1989).

■ Officer Kelly's memo was not used as evidence during any of the revocation hearings, and the district court noted that "this document was never relied on by the Court in its decision to revoke defendant's probation." Because Kelly's memo was not used as evidence against Guardino, it need not be disclosed. We affirm the district court's order denying Guardino's motion that the Bureau of Prisons produce Officer Kelly's memo.

### IV.

In No. 91–5552, we REVERSE the district court's order denying Guardino's motion to correct his sentence and REMAND the case for resentencing. We direct the district court to reconsider the revocation of Guardino's probation in light of a proper restitution order.

In No. 91–6423, we AFFIRM the district court's order denying Guardino's motion to compel production of a document in the possession of the Bureau of Prisons.

---

**9.** Officer Kelly testified at the probation revocation hearings that Guardino, in addition to failing to pay restitution, violated his probation in other ways.