UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert J. ANDREWS, Defendant–
Appellant.

No. 03–3194.

United States Court of Appeals,
Sixth Circuit.

Feb. 27, 2004.

Richard H. Blake, Asst. U.S. Attorney, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

Jerome Emoff, Cleveland, OH, for Defendant–Appellant.

Before: MARTIN and MOORE, Circuit Judges, and McKEAGUE,* District Judge.

* The Hon. David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

## OPINION

McKEAGUE, District Judge.

Defendant–Appellant Robert J. Andrews appeals from a criminal judgment and commitment entered by the district court. The parties have waived oral argument. Appellant argues that the district court erred by (1) applying a two-level enhancement to his base offense level pursuant to United States Sentencing Guidelines § 3B1.1(c); (2) assessing restitution in the amount of $75,000.00; and (3) concluding that there were more than ten victims. For the following reasons, we **AFFIRM.**

### I.

Appellant was a licensed attorney in Ohio and president of Eagle Creek Construction, a company that employed individuals to work on federally funded construction projects. On November 6, 2002, Appellant pled guilty to one count of submitting materially false statements to the United States Department of Labor and United States Department of Housing and Urban Development, in violation of Title 18, United States Code, Section 1001(a)(2).

On January 23, 2003, a sentencing hearing was held during which both the government and Appellant submitted evidence to support their respective positions on Appellant's role as an organizer or leader in the offense as well as on the amount of loss that should be attributable to Appellant's illegal actions. The government presented its evidence through the testimony of Vern G. Waldo ("Waldo"), an investigator for the United States Department of Labor. The defense presented its evidence through the testimony of Appellant.

Waldo testified about false certified payroll forms submitted by Appellant pursu-

ant to HUD-funded government contracts. Those contracts required Appellant to rehabilitate the foundations of old Army barracks buildings. As part of the investigation, Waldo received copies of Appellant's contracts and copies of certified payroll forms remitted to Appellant's funding agency, the general contractor. The certified payroll forms contained the employee's name, his hourly wage, his hours worked, and the wages paid to him. During Waldo's testimony, defense counsel objected to the admission of hearsay testimony. The district court overruled the objection, reasoning that the evidence rules do not generally apply to sentencing hearings.

Waldo then proceeded to testify that Appellant admitted that he had not paid the prevailing wage to his employees, an issue not disputed by the defense during the sentencing hearing. Waldo further testified that Appellant's secretary, Sue Schieble ("Schieble"), admitted to government agents that she handled the paperwork for the business and basically ran the office. Schieble's responsibilities included collecting employees' time sheets, calculating wages for each employee, completing the certified payrolls for Appellant's signature, and paying each employee either by cash or check. In completing the certified payrolls, Schieble wrote that the employees were being paid approximately $21.00 per hour. The employees were, however, receiving between $7.00 to $10.00 per hour, which Schieble at times provided to them, either by checks or cash. Waldo also testified that employees he had interviewed during the investigation corroborated Schieble's statements to the government.

In addition, Waldo testified that two employees informed him, in separate interviews, that Schieble was involved in shredding business records that were part of some investigation. Waldo testified that one employee told him that he saw Schie-

ble and her daughter shredding business records in the office and that Schieble asked the employee to throw the records in the dumpster. A second employee, according to Waldo's testimony, was directed by Appellant and Schieble to dispose of business records.

Appellant testified that he never informed Schieble that he was underpaying the employees on the job. He also testified that although Schieble collected the time sheets and completed the certified payrolls, Appellant himself made the actual payments to the employees. Finally, Appellant denied that either he or his secretary were involved in the destruction of documents.

The government and Appellant also provided evidence to support their respective positions on the amount of loss that should be attributable to Appellant's illegal actions. Waldo provided the district court with a loss estimation for 16 employees who worked for Appellant, six of whom Waldo personally interviewed. Waldo estimated the total loss attributable to Appellant's failure to pay the 16 employees the prevailing wage was $278,751.48. For the six employees Waldo personally interviewed, he testified the loss figure was $150,543.63. Appellant testified that the loss figure was less than $50,500.

After the evidence was presented, the district court imposed a two-level enhancement under U.S.S.G. § 3B1.1(c), concluding that Appellant supervised his secretary. The court also determined the loss attributable to Appellant's illegal activities was $75,000. Finally, the court concluded that there were more than ten victims but less than 50.

On appeal, Appellant challenges the district court's findings. First, he contends that the court committed clear error in imposing the enhancement under § 3B1.1(c). Next, Appellant argues that

the district court abused its discretion in determining both the existence, the amount of restitution, and the amount of loss. Finally, Appellant argues that the court erred in concluding that there were more than 10 victims.

## II.

### A. ENHANCEMENT FOR LEADERSHIP ROLE

The Supreme Court's decision in *Buford v. United States*, 532 U.S. 59, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001) has created some ambiguity as to the proper standard of review in evaluating a district court's imposition of a section 3B1.1 enhancement. *See United States v. Solorio*, 337 F.3d 580, 600 (6th Cir.2003)(noting that prior to the Supreme Court's decision in *Buford*, a district court's factual findings were reviewed for clear error while legal conclusions were reviewed *de novo*). Because we would affirm under deferential or *de novo* review in this case, we need not determine which standard of review applies to the district court's application of section 3B1.1.

Section § 3B1.1 of the United States Sentencing Guidelines provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1(a-c). This court has explained that to enhance a sentence under § 3B1.1, the district court should make a factual finding that defendant had supervised at least one person. *Caseslorente*, 220 F.3d at 736.

■ Here, Appellant contends that his sentence enhancement was inappropriate because there was no evidence to support the conclusion that Schieble, Appellant's secretary, had knowledge of or participated in underpayment of his workers.[1] Additionally, Appellant argues that there was no evidence that he directed Schieble to engage in any illegal conduct.

The district court did not err in increasing Appellant's offense level by two for his role as an organizer, pursuant to § 3B1.1(c). The court made a specific factual finding that Appellant supervised Schieble while conducting his illegal actions and the court's findings were sufficient to support the enhancement. There was evidence presented that Schieble had knowledge of the misconduct, shredded documents, and directed others to also de-

---

1. Appellant appears to argue that any evidence upon which the court based its conclusions was derived from impermissible hearsay testimony presented by the Department of Labor investigator. However, U.S.S.G. § 6A1.3 allows the court to consider relevant information without regard to its admissibility under the rules of evidence provided that the information has a sufficient indicia of reliability. *See also United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir.1992)(stating that the district court may consider hearsay evidence in determining sentences provided that the ac-

cused has the opportunity to refute the evidence and the evidence bears some indicia of reliability). Here, the district judge found the evidence sufficiently reliable to support a preponderance of evidence finding and Appellant had the opportunity to refute the government's testimony. Thus, to the extent that Appellant bases his arguments on the fact that the district court erroneously used hearsay testimony, he has failed to establish that the evidence presented bore no indicia of reliability.

stroy business documents. After hearing testimony from both sides, the court concluded that Schieble knew the payroll forms were incorrect, made certain payments herself of amounts that would be less than those reflected on the forms, was second in charge of the office, and directed employees on two separate occasions to throw away business documents. Additionally, other employees corroborated Schieble's statements to government agents that she basically ran the office.

Though Appellant denies having directed Schieble to engage in the illegal activity, there was sufficient evidence to establish the implausibility of this contention, given Schieble's position within company and the fact that Schieble herself completed the fraudulent certified payroll forms for Appellant's signature. Accordingly, the district court's findings and the evidence are sufficient to support the sentence enhancement.

### B. ORDER AND AMOUNT OF RESTITUTION

■ Next, Appellant contends that the district court abused its discretion in determining both the existence and amount of restitution. Restitution orders are reviewed in a bifurcated manner *United States v. Guardino*, 972 F.2d 682, 686 (6th Cir.1992). The propriety of ordering restitution is reviewed *de novo. Id.* The amount of restitution as determined by the district court is reviewed under an abuse of discretion standard. *Id.*

Appellant first argues that under 18 U.S.C. § 3663(a)(1)(B)(i)(I), the district court erred in ordering restitution. However, this argument fails because while it is unclear whether the district court ordered restitution pursuant to 18 U.S.C. § 3663 or § 3663A, restitution was properly ordered pursuant to § 3663A, as recommended by the presentence investigation report.

In order to understand why section 3663A is applicable in this case, it is important to note its origins. In April 1996, Congress passed the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"). The AEDPA included the Mandatory Victims Restitution Act ("MVRA"), which amended the Victim and Witness Protection Act. The MVRA added Section 3663A, which requires mandatory restitution "for any offense ... that is ... an offense against property under this title, including any offense committed by fraud or deceit ... in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. 3663A(c)(1)(B). *See also United States v. Butler*, 297 F.3d 505, 518 n. 12 (6th Cir.2002)(discussing the MVRA); *United States v. Bearden*, 274 F.3d 1031, 1040 n. 3 (6th Cir.2001)(holding the courts must impose restitution even if the victim enters into a settlement releasing a defendant from future liability). Thus, an order of restitution is mandatory under section 3663A.

There is no doubt that Appellant's illegal activities resulted in a financial loss to his employees. Appellant's own testimony during the sentencing hearing provides evidence that the issue of whether there was a loss due to his illegal actions was not in dispute; the only dispute involved disagreement over the amount of loss attributable. In addition, the government presented credible evidence that employees had been underpaid. Unlike the discretion afforded the district court under 18 U.S.C. § 3663(a)(1)(B)(i)(I) in determining whether to order restitution, the court has no such discretion under § 3663A. Because the conduct in this matter occurred after April 24, 1996, the MVRA applies here. Accordingly, restitution was properly ordered pursuant to § 3663A.

■ Second, and in the alternative, Appellant contends that the court abused its

discretion in setting restitution in the amount of $75,000. Appellant argues that any calculation greater than $50,000 was based on speculation. We disagree. An abuse of discretion occurs only when the district court relies upon clearly erroneous findings of fact or when the court improperly applies the law or uses an erroneous legal standard. *United States v. Hart,* 70 F.3d 854, 859 (6th Cir.1995).

The court was presented with certified payroll forms that indicated an unusual pattern of employees working a few hours a day or only a couple of days per week. The court, after hearing the evidence, determined that the payroll forms were doctored in terms of the hours. The court found that the government failed to establish that the loss was over $120,000 but that the government did establish by a preponderance of the evidence that the amount of loss was over $70,000. The court credited the statements made by the employees to the government agents that the employees tended to work a normal work day. Contrary to Appellant's assertion that the district court appeared to rely solely upon records which the court had discredited as being doctored, the court specifically stated that it based its findings on the number of workers that appeared on the payroll forms and the statements made by those workers as to the number of hours they had actually worked. This court must defer to the district court's credibility determinations at the sentencing hearing. *United States v. Barrett,* 890 F.2d 855, 868 (6th Cir.1989). Accordingly, the court did not abuse its discretion in determining the amount of restitution to be $75,000.

## C. AMOUNT OF LOSS

■ Appellant also appears to challenge the district court's amount of loss calculation and its impact upon the length of his sentence. The district court added eight levels to appellant's offense level because it

found that the amount of loss was over $70,000 but under $120,000. U.S.S.G. 2B1.1(b)(1)(E). The district court's finding as to the amount of loss is a question of fact, reviewed for clear error. *United States v. Comer,* 93 F.3d 1271, 1285 (6th Cir.1996). A finding is clearly erroneous when although there is evidence to support such a finding, a reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.* at 1285. Such a mistake has not been committed in this case.

Under section 2B1.1, a court need not determine the amount of loss with precision. Rather, the court need only calculate a reasonable estimate of the loss and may base this estimate on factors such as the number of victims and the average loss to each victim or general factors such as the scope and duration of the offense. *Id.* at 1284 (citing U.S.S.G. § 2B1.1, application note 3). At the sentencing hearing, the court reached its loss calculation by noting the number of workers and crediting their statements about the length of their workday. The court heard testimony, reviewed the evidence presented during the hearing, and determined that the loss amount exceeded $70,000 based on the statements of the workers and the evidence presented during the hearing. Because we do not believe that the district court committed clear error, the court's loss determination is affirmed.

## D. NUMBER OF VICTIMS

■ Finally, appellant argues that the district court erred in concluding that there were more than ten victims. This argument has no merit. The government provided exhibits that showed that more than ten individuals were employed by Appellant. While the court may have found the number of hours worked to be doctored on the payroll forms, there was no

dispute as to the number of employees listed. Additionally, testimony was presented during the hearing that more than ten people were employed by appellant. Finally, there was no evidence that Appellant failed to pay the prevailing rate to less than ten of his employees. Accordingly, the district court's determination that there were more than ten victims is upheld.

For all these reasons, the judgment of the district court is **AFFIRMED**.