**UNITED STATES of America,**
**Appellee,**

v.

**David BAGDY, Appellant.**

No. 08–4680.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Dec. 1, 2009.

Filed: Dec. 3, 2009.

Robert L. Eberhardt, Esq., Office of the United States Attorney, Pittsburgh, PA, for Appellee.

Karen S. Gerlach, Esq., Office of Federal Public Defender, Pittsburgh, PA, for Appellant.

Before: FISHER, HARDIMAN and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

David Bagdy appeals from the judgment of the District Court ordering him to pay $566,115.57 in restitution with interest, and sentencing him to 36 months imprisonment. We will affirm.

### I.

Bagdy raises two issues on appeal. He first claims the District Court erred in declining to waive interest on the order of restitution. Bagdy also claims the District Court erred in considering his failure to make any restitution payments prior to sentencing as a factor at sentencing. Bagdy argues that the District Court erred in both instances because the evidence showed that Bagdy's financial situation was poor and he had no ability to pay restitution or interest. We find Bagdy's arguments unpersuasive, primarily because these matters are committed to the sound discretion of the District Court.

### II.

Because we write for the parties, we recount only those facts necessary to our decision. Bagdy pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343 after defrauding his employer of over $500,000 through a kickback scheme with a Russian lumber supplier. Bagdy was indicted on May 16, 2007 and soon thereafter agreed to restitution of $566,115.57. After indictment, Bagdy made numerous motions to continue his change of plea hearing "in order to allow [him] the opportunity to find a significant portion of the restitution." (App. R. 50–51.) The change of plea was ultimately held on July 7, 2008. Despite multiple continuances, Bagdy had not made any restitution payments by the time of sentencing on October 20, 2008.

The Presentence Investigation Report (PSR) calculated Bagdy's final offense level as 20 and criminal history category as I, resulting in a Guidelines range of 33–41 months imprisonment. The PSR also contained a summary of Bagdy's financial condition. The PSR provided that, at the time of the interview, Bagdy had $24,000 in his savings account, and a net monthly cash flow of $3258. Bagdy also had substantial outstanding debts upon which he had ceased making payments. The PSR reported that Bagdy "provided minimal information" and "little supportive documentation" at the time of the presentence interview, causing his financial situation to

be "murky." At the sentencing hearing, Bagdy testified that his income had dropped substantially since his indictment, forcing him to deplete his savings to pay his living expenses.

At sentencing, the District Court noted that Bagdy had requested numerous continuances for the purpose of raising money to pay restitution, but had not made any payments. The District Court stated:

> I mean even if one were to make a good faith payment of $500, you think you'd do it. I mean that's just stupid and it probably cost you a couple of extra months in prison. But that was a decision you made. I mean I was a magistrate in McKees Rocks with some of the poorest people in Pennsylvania, and those people used to come in with their $5.00 payments every month on payment plans. I mean if they could do it, you could have paid something. That just—I think that speaks volumes.

(App. R. 70–71.) The Court sentenced Bagdy to 36 months imprisonment and ordered him to pay the agreed upon restitution amount of $566,115.57, with interest.

Though Bagdy did not object to the imposition of interest at sentencing, he promptly filed a motion to correct or amend the sentence, seeking a waiver of interest under 18 U.S.C. § 3612(f)(3)(A) on the ground that he was unable to pay. The District Court summarily denied the motion.

### III.

#### A.

Bagdy argues that a district court's refusal to waive interest on restitution is reviewed for an abuse of discretion. *See United States v. Guardino,* 972 F.2d 682, 686 (6th Cir.1992). The Government argues that, because Bagdy did not object to the award of interest at the sentencing hearing, our review is limited to the more stringent plain error standard. *See Jones*

*v. United States,* 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). We need not decide this issue because Bagdy's argument fails even under the more lenient "abuse of discretion" standard.

There is a presumption that a defendant "shall pay interest on any fine or restitution of more than $2,500." 18 U.S.C. § 3612(f)(1). But if a district court "determines that the defendant does not have the ability to pay interest under this subsection, the court *may* waive the requirement for interest." 18 U.S.C. § 3612(f)(3)(A) (emphasis added). The Government argues that the burden of proving inability to pay under § 3612(f)(3) falls on the defendant, and Bagdy failed to make an adequate evidentiary showing entitling him to a waiver of interest. Bagdy contends that he made the requisite showing of inability to pay. The District Court's summary order denying Bagdy's motion to correct or amend his sentence does not explain why Bagdy was not entitled to a waiver of interest. Even assuming, *arguendo,* that Bagdy presented sufficient evidence to trigger the District Court's discretion under 18 U.S.C. § 3612(f)(3), we find no abuse of discretion on the record in this case.

We also note that the issue before the Court was not Bagdy's ability to pay restitution and interest at the time of sentencing. The Court recognized that Bagdy could not afford to pay a fine because of his mandatory restitution obligation. Rather, the issue was Bagdy's personal capacity to pay restitution and interest over time. The Court ordered that he pay towards those obligations 50 percent of the amounts he earned from the Bureau of Prisons' Financial Responsibility Program and a minimum of 10 percent of his gross income during his three years of supervised release. His responsibility for those amounts, of course, did not cease at that

point. Given Bagdy's demonstrated earning capacity, the District Court did not abuse its discretion.

In sum, while § 3612(f)(3) provides the District Court with the authority to waive interest when a defendant is unable to pay, it does not *require* waiver of interest. Therefore, the District Court did not err by imposing interest on the restitution order.

## B.

We turn to Bagdy's assignment of error to his sentence of 36 months incarceration. We review a district court's sentencing decision for abuse of discretion. *United States v. Tomko,* 562 F.3d 558, 561 (3d Cir.2009) (en banc). In *Tomko,* we explained the basis for this standard, noting the District Court's superior "vantage point" in sentencing matters: "the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id.* at 566 (quoting *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)). Therefore, we review both the procedural and substantive reasonableness of a sentence for abuse of discretion. "[A]n abuse of discretion has occurred if a district court based its decision on a clearly erroneous factual conclusion or an erroneous legal conclusion." *Id.* at 567–68 (quoting *United States v. Wise,* 515 F.3d 207, 217 (3d Cir.2008)). "[A]bsent any significant procedural error, we must give due deference to the district court's determination that the § 3553(a) factors, on a whole justify the sentence." *Id.* at 568 (internal quotation and citation omitted).

Bagdy argues that the District Court abused its discretion when it relied upon his failure to make a restitution payment prior to sentencing because it was clear error for the District Court to conclude that he was financially able to pay the restitution. Bagdy's argument misconstrues the District Court's finding. The District Court did not conclude that Bagdy should have paid the entire balance of his restitution obligation prior to sentencing; rather the Court found it troubling that Bagdy failed to make *any* payment prior to sentencing, particularly after Bagdy had requested continuances for the specific purpose of gathering money for restitution.

There was ample evidence to support the District Court's finding that Bagdy was capable of paying some restitution. The PSR reported that, while employed by the victim in 2003 and 2004, Bagdy had been earning between $5000 and $7000 per month, which was supplemented by approximately $3500 per month from other consulting jobs. During this time, Bagdy stole over $500,000 from his employer, and offered no explanation regarding the use of the money other than maintenance of his lifestyle. When he first met with probation, Bagdy had over $20,000 in savings and income of $6000 per month. In May 2007, Bagdy sold his house at a profit of over $100,000. Furthermore, in August 2008, after his guilty plea, but before sentencing, Bagdy took a trip to Washington, D.C. with his son, where he was cited for disorderly conduct after he had been drinking. Based on the record, the District Court's conclusion that Bagdy was financially capable of paying a nominal sum towards restitution was well supported by the record and far from clearly erroneous. Bagdy's failure to make any restitution despite his ability to do so gives rise to an inference that he did not appreciate the gravity of his crime or his financial obligation to his victim. The District Court's reliance on these factors in sen-

tencing Bagdy was well within its considerable discretion.

For the foregoing reasons, we will affirm the judgment of the District Court.