MARSHAL D. MORGAN, UNITED STATES MAGISTRATE JUDGE
I. Introduction
On June 13, 2018, United States Probation Officer ("USPO") Olivia Beltrán-Caraballo filed a "Motion to Show Cause Notifying the Court of Alleged Violations of Defendant Madeline Rivera-Rodríguez' Supervised *280 Release Term." (Docket No. 1998.) The Motion Notifying Violations of Supervised Release alleged that the defendant, Ms. Rivera-Rodríguez, engaged in unlawful use of controlled substances, failed to notify USPO Beltrán-Caraballo at least ten (10) days prior to any change of residence, and associated with a person convicted of a felony without the USPO's permission. Id.
On June 18, 2018, the Court issued a warrant for defendant's arrest. (Docket No. 2002.) On June 27, 2018, defendant was arrested and brought before the Court for her initial appearance. On July 9, 2018, she waived her right to a preliminary revocation hearing and the Court made a finding of probable cause. (Docket No. 2010.)
On July 24, 2018, the defendant filed a "Motion for Disclosure of Evidence" (the "Motion for Disclosure") (Docket No. 2015) in anticipation of her final revocation hearing, which is scheduled to be held before Chief Judge Gustavo A. Gelpí on September 11, 2018. In her Motion for Disclosure, the defendant requested disclosure of the following evidence directly from USPO Beltrán-Caraballo:
1. Copy of all documents related to all in-patient and out-patient programs to which Ms. Rivera was a patient during her term of supervised release including, but not limited to, referral Intake Assessment Reports, Treatment Plan, Discharge Summary Letter, Progress Reports and attendance records from any and all programs including Hogar Madre Dominga in Ponce, Guarabi Housing in Vega Alta and Clínica de Tratamiento Psicoterapéutico in Bayamón;
2. All drug test results, including and confirmatory test results from the National Testing Laboratory;
3. All written drug-use admissions signed by Ms. Rivera;
4. Ms. Rivera's Random Drug Testing Program log;
5. Copy of all monthly reports submitted by Ms. Rivera;
6. All chronological notes in the U.S Probation Office's possession created in the course of Ms. Rivera's supervision related to the alleged violations, to the extent the information is not confidential;
7. Any evidence that Ms. Rivera's consensual partner is a convicted felon, a user of controlled substances, and abusive towards Ms. Rivera: and
8. Copy of any other evidence in support of the allegations contained in the motion for revocation.
II. Discussion
Contrary to trials on the merits, revocations of supervised release proceedings are subject to "minimum requirements of due process." United States v. Maloney, 513 F.3d 350, 356 (3d Cir.2008) (internal citations omitted). Accordingly, with respect to discovery, due process and Fed. R. Crim. P. 32.1 (which governs revocation of supervised release proceedings) require only that a defendant receive "disclosure of the evidence against him." See Fed.R.Crim.P. 32.1(b)(2)(B). See also United States v. Derewal, 66 F.3d 52, 55 (3d Cir.1995) ; United States v. Guardino, 972 F.2d 682, 689 (6th Cir.1992).
It is pursuant to this rationale that "neither Rule 32.1 nor the case law can reasonably be read ... to require automatic production of a probation officer's entire file, even where the probation officer will be a witness during the revocation hearing." United States v. Derewal, 66 F.3d 52 (1995). See also United States v. Castelli, 550 Fed.Appx. 91 (2014) (unpublished).
*281 That logic is further justified by case law that makes it quite clear that a probation officer ... "is a neutral, information-gathering agent of the court, not an agent of the prosecution." United States v. Washington, 146 F.3d 219, 223 (4th Cir.1998). "In reporting suspected violations, and even in recommending a particular course of action, the probation officer is simply performing his or her statutory duty to assist the court in its supervision of individuals on supervised release, which supervision is an integral part of the courts' quintessentially judicial sentencing responsibility." See United States v. Bermudez-Plaza 221 F.3d 231, 234 (1st Cir.2000)citing Mejia-Sanchez, 172 F.3d 1172, 1175 (9th Cir.1999), United States v. Davis, 151 F.3d 1304, 1307-08 (10th Cir.1998).
For that reason, a request for disclosure of material within the USPO's files should be narrowly tailored to seek only evidence that would be used against the defendant during the revocation hearing or that could be used to exculpate the allegations. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),
In this case, the Court notes that Requests for Disclosure Nos. 1-5 and 7-8 of defendant's Motion for Disclosure appear to be narrowly tailored to seek only evidence that supports the alleged violations of supervised release. Indeed, those requests for disclosure are directed precisely at the evidence that the United States would likely use to prosecute the revocation of supervised release.
With respect to defendant's Request for Disclosure No. 6, namely "[a]ll chronological notes in the U.S. Probation Office's possession created in the course of Ms. Rivera's supervision related to the alleged violations, to the extent the information is not confidential," the Court notes that there is conflicting precedent in this district as to whether the probation offices' chronological notes are even discoverable. Standing Order in Misc. No. 18-mc-450 (FAB) (the chronological notes prepared by the probation officers, known as "chronos," will not be shown or disclosed to the government or the defendant or his or her counsel.) But see United States v. Luis Rosario-Rivera, Crim. No. 08-281 (CCC), Docket Entry No. 4134 (the Court allowed access to review the probation officer's chronos notes, but did not order copies to be produced or redacted.)
The probation officer's chronological notes undisputedly constitute "confidential records which [are] prepared by the probation officer for use in carrying out [his or] her duties as a member of the judiciary, not as an arm of the prosecution." United States v. Houston, 2009 WL 2488176 at *53 (E.D.Cal., Aug. 13, 2009) (unpublished). See also , Washington, 146 F.3d at 223 ; United States v. Joline, 2009 WL 4795607 (M.D.Pa. 2009) (unpublished). United States v. Rockot, 2013 WL 5536224 (unpublished). United States v. Ritter, 45 Fed.Appx. 609 (unpublished).[1] These records also generally contain confidential materials regarding supervising techniques and assistance provided by third parties to the probation officers in the discharge of their duties that may affect the safety of third parties. As such, providing unfettered production of the confidential materials may have a chilling effect on the probation officer's ability to conduct adequate *282 supervision and should be strongly disfavored.
Notwithstanding those considerations, this Court finds that due to the nature of the alleged violations of supervision in this case, it is possible that important and relevant information could be found within the probation officer's chronos notes such that a categorical prohibition against disclosure of these confidential records presents too high a risk of prejudice to the defendant.
For these reasons, the Court grants defendant's Requests for Disclosure Nos. 1, 2, 3, 4, 5, 7 and 8 because the materials are related to the alleged violations and contain evidence that would likely be used against the defendant during the revocation hearing. As to Request for Disclosure No. 6, the Court orders the supervising probation officer to disclose only the chronos notes related to the alleged violations, including notes that may exculpate the defendant's conduct, after the same has been redacted to protect or conceal information regarding third parties, or any information that may compromise the personal safety of any individual.
IT IS SO ORDERED.

The court in Ritter held as follows:
"Due process did not require the government to produce the probation officer's notes because the notes were not used as evidence against Ritter. See United States v. Donaghe, 924 F.2d 940, 944 (9th Cir.1991). Further, lack of access to the notes did not compromise Ritter's rights under the confrontation clause to a 'fair and meaningful opportunity to refute or impeach the evidence against him.' See United States v. Martin, 984 F.2d 308, 310 (9th Cir.1993) )."