**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas P. GIFFORD, Defendant–Appellant.**

No. 95–3530.

United States Court of Appeals,
Sixth Circuit.

Submitted March 29, 1996.

Decided July 22, 1996.

Nancy A. Vecchiarelli, Asst. U.S. Atty. (briefed), Cleveland, OH, for Plaintiff–Appellee.

Mark T. Rudy (briefed), Mark T. Rudy & Associates, Cleveland, OH, for Defendant–Appellant.

Before: KENNEDY, WELLFORD, and MOORE, Circuit Judges.

MOORE, J., delivered the opinion of the court, in which WELLFORD, J., joined. KENNEDY, J. (p. 163), delivered a separate concurring opinion.

MOORE, Circuit Judge.

Thomas P. Gifford appeals from a district court order requiring him to make $6,776.81 in restitution payments to Security Bank and Trust. We hold that the district court had the authority to enter such a restitution order, but that it erred by designating a total restitution amount in excess of the loss from the offense for which Gifford was convicted. We therefore reverse and remand for entry of a revised restitution order.

## I

In June 1988, Thomas P. Gifford pleaded guilty to fraudulent use of an unauthorized access device in violation of 18 U.S.C. § 1029(a)(2). Gifford received a five-year sentence, with the first six months to be served in prison and the remaining term to be served on probation. He was also ordered to pay restitution. The order specifically stated:

> IT IS FURTHER ORDERED that restitution in the total amount of $39,600.02, which represents the loss to

| | |
|---|---|
| SECURITY BANK & TRUST | $10,546.81 |
| NATIONAL CITY CORPORATION | 6,501.49 |
| AMERITRUST | 22,551.72 |

> be made during the period of Probation, and under the supervision of the Probation Department.

Judgment, *United States v. Gifford*, No. CR88–132A (N.D.Ohio July 28, 1988). The restitution to Security Bank and Trust ("Security") represented its loss from the offense for which Gifford was convicted; the restitution to National City Corporation ("National City") and Ameritrust, on the other hand, represented losses from uncharged frauds in which Gifford was involved. Following the restitution section in the judgment was a separate section titled, "SPECIAL CONDITION OF PROBATION," in which the district court directed Gifford to join Gamblers Anonymous. *Id.*

In October 1991, after having twice violated his probation conditions, Gifford was sentenced to serve the balance of his term in prison, with no change in his restitution obligations. He then filed two motions to vacate sentence under 28 U.S.C. § 2255, arguing *inter alia* that the amount of restitution unlawfully exceeded the amount of loss described in the indictment. The district court entered a single decision dismissing both mo-

tions. On appeal, however, this court held that under *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), Gifford could not be ordered to make restitution payments in excess of the amount of loss from the offense of conviction.[1] Because the offense for which Gifford was convicted involved only the $10,546.81 fraud on Security, we remanded the case for further proceedings in the district court. *Gifford v. United States*, No. 92–4194, 1993 WL 239150 (6th Cir. June 29, 1993) (unpublished order).

By this time, Gifford had already submitted $6,752.00 in restitution payments, $2,120.00 of which had been forwarded to Security and $4,632.00 to National City and Ameritrust. On remand in April 1994, the district court realized that our decision removed the obligation to make restitution to National City and Ameritrust, leaving only the $10,546.81 restitution obligation to Security. The court therefore confronted the question of whether Gifford should receive $4,632.00 in credit towards his restitution obligation to Security, leaving $3,794.81 to be paid. Crediting Gifford would mean that his restitution payments would total $10,546.81, the loss from the offense of conviction—but it would also mean that, unless the $4,632.00 received by the other banks were somehow recovered and paid to Security, Security would receive only $5,914.81 in restitution for a $10,546.81 loss. The district court decided not to credit Gifford for the misdirected $4,632.00 and instead ordered him to pay $8,426.81 more in restitution to Security.

Unfortunately, Gifford was without the assistance of counsel when the district court made this decision, so we vacated its order and remanded for appointment of counsel. *United States v. Gifford*, No. 94–3434, 1994 WL 447290 (6th Cir. Aug.18, 1994) (unpublished order). On remand, the district court again decided not to credit Gifford for the misdirected $4,632.00. Apparently because by this time Gifford had evidently made another $1,650.00 in restitution payments to Security, the district court entered an order directing him to submit $6,776.81 more, for a

total restitution to Security of $10,546.81. This appeal followed.

## II

■ Gifford first argues that the district court lacked the authority to impose any restitution obligation. He cites *United States v. Webb*, 30 F.3d 687 (6th Cir.1994), and 18 U.S.C. §§ 3663(f) and 3583 in support of this argument. The government contends that this issue is not properly before us, but because none of these citations upholds Gifford's conclusion, we will reject this claim on its merits.

■ *Webb* stands for the proposition that restitution obligations cease upon revocation of probation when the restitution is a discretionary condition of probation or supervised release. *Id.* at 690–91. Gifford asserts that, under *Webb*, he was no longer required to pay restitution after his probation was revoked in October 1991. When restitution is a "separate component of the judgment of conviction," however, *Webb* allows a district court to continue a convict's restitution obligations even after revoking probation or supervised release. *Id.* Two factors indicate that the restitution here was not merely a condition of Gifford's probation. First, the actual judgment entered against Gifford listed the restitution obligation as a discrete part of his sentence, rather than as part of the section that imposed conditions of probation. Second, although the district court did not identify the statutory basis for its restitution order, we assume in these circumstances that it was the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663–3664, which contemplates restitution as a separate element of sentencing, independent of probation. *United States v. Tunning*, 69 F.3d 107, 115 (6th Cir.1995); *Webb*, 30 F.3d at 689–91. The district court therefore had the authority under *Webb* to continue Gifford's restitution obligation after revoking probation.

■ Nor did the limitations in 18 U.S.C. § 3663(f) on the time in which restitution payments may be required deprive the dis-

---

1. Although 1990 amendments to the restitution statute have somewhat undermined the holding in *Hughey,* those amendments do not apply to sentences that, like Gifford's, took place before the amendments were enacted. *United States v. Guardino,* 972 F.2d 682, 687 (6th Cir.1992).

trict court of authority to order Gifford to pay restitution. Gifford argues that his release in January 1989 from his initial six-month prison term marked the beginning of the five-year period during which he could be compelled to make restitution under § 3663(f)(2)(B), and that the April 1994 district court restitution order was therefore void because it fell outside that period. Gifford fails to realize, however, that the district court's October 1991 order revoking his probation and sentencing him to serve the remaining four and a half years of his sentence in prison constituted an imposition of imprisonment without probation. The district court may accordingly continue to demand restitution payments until five years have passed since Gifford's release from that imprisonment. *See* 18 U.S.C. § 3663(f)(2)(B).

Finally, § 3583 deals exclusively with supervised release. Gifford was never on supervised release. He was on probation or in prison throughout the time period relevant to this case. Gifford's reliance on § 3583 is therefore misplaced.

### III

The remaining issue in this case is the propriety of the district court's decision not to credit Gifford for the $4,632.00 in restitution payments that ended up in the hands of National City and Ameritrust. Although federal statutes sometimes characterize restitution as a penalty, *e.g.*, 18 U.S.C. § 3663(a)(1) (referring to restitution and "other penalty"), a primary purpose of restitution is to compensate the innocent victim of a crime. *See, e.g., Webb,* 30 F.3d at 689–90; *United States v. Anglian,* 784 F.2d 765, 767 (6th Cir.), *cert. denied,* 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986). When the district court ordered Gifford to pay an additional $6,776.81 in restitution, it did so in an understandable effort to ensure that Security would be made whole. Had the district court credited Gifford for the amount received by the other two banks, it would have put Security at risk of not recovering—at least

through the restitution mechanism—the full amount of the loss caused by Gifford's fraud.

Unfortunately for Security, the federal courts simply do not have the authority to force Gifford to pay more than $10,546.81 in restitution. As this court noted in an earlier appeal by Gifford, "[a]n order to pay restitution in excess of the amount of loss from the offense of conviction is contrary to law." *Gifford,* 1993 WL 239150, at 2; *see also Hughey v. United States,* 495 U.S. 411, 420, 110 S.Ct. 1979, 1984–85, 109 L.Ed.2d 408 (1990) ("[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order."); *United States v. Guardino,* 972 F.2d 682, 687 (6th Cir.1992) (holding that when ordering restitution a "sentencing court [has] no authority to go beyond the offense of conviction in any situation"). Pursuant to court order, Gifford has already paid approximately $8,402.00 in restitution. Although part of that payment erroneously ended up in the hands of the other two banks, we do not have the authority to force Gifford to bear the brunt of this mistake, revealed subsequently by *Hughey,* by requiring him to pay more than a total of $10,546.81.

We therefore **REVERSE** the district court's order and **REMAND** for issuance of an order ensuring that Gifford does not pay more than $10,546.81 in total restitution.[2]

KENNEDY, Circuit Judge, concurring.

The restitution order here directed the payment of $39,600.02. While it listed three banks and the amount of the loss of each, it did so as an explanation as to how the sum of $39,600.02 was calculated. Thus, when defendant paid the amounts he did to the Clerk of the Court, he was paying on the $39,600.02 ordered. That order has now been reduced to $10,546.81. Defendant is entitled to credit for the amounts he has paid on the order. His obligation is to pay until the amount of the obligation of the order is fulfilled, not until the victim is fully compensated. Had the order been drafted differently and directed separate payment to separate individuals

---

**2.** In reaching this result, we do not address the means, if any, by which Security might recover

the entirety of its loss.

or entities, instead of directing the payment of a specific sum, I am not sure defendant would be entitled to credit for the amount paid to persons who were not victims of the counts of conviction. While the District Court would have had no jurisdiction to award restitution to those who were not victims of the counts of conviction, the defendant, rather than Security Bank, might. well have had to bear the consequences of the District Court's erroneous order. However, since the order here does not present that problem, I concur in the Court's holding that defendant receive credit for all amounts paid to the Clerk of the Court.