United States Court of Appeals,

Eleventh Circuit.

No. 94-8323.

Robert BLAIK, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

July 24, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-00305-CV), Robert L. Vining, Jr., Judge.

Before HATCHETT, Chief Judge, BIRCH, Circuit Judge, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

In this appeal from the denial of a 28 U.S.C. § 2255 motion, we determine whether a plea agreement, under which the petitioner specifically agreed to pay restitution to all victims of a fraudulent scheme, can be invalidated collaterally under *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990). The district court ordered restitution in accordance with the plea agreement and denied the section 2255 motion on that basis. We reverse, vacate petitioner's sentence as to the restitution, and remand.

I. FACTUAL AND PROCEDURAL BACKGROUND

In a thirty-count indictment filed on July 28, 1987, petitioner-appellant, Robert Blaik, was charged with using the mail to defraud optometrists by marketing a system to manufacture plastic prescription eyeglass lenses in violation of 18 U.S.C. § 1341. Blaik, as president of Clearlite Laboratories, Inc./Clearlite America, located in Marietta, Georgia, engaged in this fraudulent scheme from September 30, 1982, until February 4, 1985. The indictment identified thirty victims that Blaik had defrauded.

Trial was scheduled for February 11, 1988, but Blaik did not appear on that date. He was apprehended and charged in a separate indictment for knowingly failing to appear for trial. On June 7, 1988, in open court, Blaik signed a negotiated plea agreement with the government. He pled guilty to the failure to appear charge as well as to Counts 1 and 2 of the mail fraud indictment in

exchange for the government's agreement to dismiss the remaining twenty-eight counts. In relevant part, the plea agreement provided:

> The defendant authorizes and agrees to allow the Court to impose as a condition of his sentence the payment of restitution in an amount which may reflect the loss to all thirty (30) victims named in the indictment; however, the government agrees to make no recommendation to the Court as to the specific amount to be imposed.

Original R1-21-2.

Following Blaik's guilty plea, the United States Probation Office prepared his presentence report ("PSR") and determined that thirty victims had been defrauded of $58,000.00. In his objections to the PSR, Blaik did not contest paying restitution to each of the thirty victims named in the indictment. Instead, Blaik requested credit for refunds and the value of items received by the victims. In response, the probation office adjusted the $58,000.00 loss to the victims to account for the refunded amount of $6,736.12. The final adjustment showed that Blaik owed $51,623.88 to the victims of his fraudulent scheme.

On August 8, 1988, the district court conducted a sentencing hearing. At that hearing, Blaik's sole objection to the restitution amount was that it did not reflect the value of the items actually received by the victims during the course of his fraudulent scheme. Blaik did not object to restitution being made to all thirty victims of the scheme. The district court sentenced Blaik to two consecutive five-year sentences for the two counts to which he pled guilty and imposed restitution in the amount of $51,623.88.[1] Neither the PSR nor the judgment and commitment order state that restitution was imposed pursuant to the Federal Probation Act, 18 U.S.C. § 3651 (repealed Nov. 1, 1986) ("FPA") or the Victim and Witness Protection Act, 18 U.S.C. § 3663-3664 (1988) ("VWPA").[2] In accordance with the plea agreement, the government dismissed Counts 3 through 30 of the indictment.

---

[1]The district court also sentenced Blaik under the Sentencing Guidelines to twenty-four months, which subsequently was reduced to eighteen months because of a computation mistake, on the failure-to-appear charge. This sentence was to run consecutively to the sentence imposed in the mail fraud case.

[2]*See United States v. Stone,* 948 F.2d 700, 702 nn. 1-2 (11th Cir.1991) (giving the legislative history for these statutes).

On direct appeal, Blaik argued that the district court had abused its discretion in ordering restitution in the amount of $51,623.88. He did not argue that the victims were not entitled to restitution or that it should have been limited to the counts of conviction. Rather, he contended that the district court erroneously imposed restitution without making specific factual findings on the issues that Blaik contested. This court affirmed Blaik's sentence. *United States v. Blaik,* 885 F.2d 878 (11th Cir.1989) (mem.).

On May 21, 1990, the Supreme Court decided *Hughey,* which limited restitution under the VWPA to losses caused by the offenses of conviction. On January 15, 1993, Blaik filed a motion to correct his sentence under Federal Rule of Criminal Procedure 35.[3] Arguing that his restitution was unlawful under *Hughey,* Blaik sought to reduce the restitution amount from $51,623.88 to $3,000.00, the amount of victim loss in the two mail fraud counts to which he pled guilty. He further asserted that *Hughey* applied retroactively to invalidate his restitution.

Arguing that *Hughey* was not retroactive, the government additionally responded that *Hughey* was inapplicable because the counts of conviction concerned mail fraud acts that occurred on September 30, 1982, and December 2, 1982, respectively, and the VWPA was not effective until January 1, 1983. Therefore, the government argued that Blaik's restitution was imposed under the FPA. The district court denied Blaik's Rule 35 motion because, "[a]s part of a negotiated plea the defendant, Robert Blaik, agreed to allow the court to order restitution in an amount to afford restitution to all thirty (30) victims named in the indictment." R1-13-1.

Blaik appealed the denial of his Rule 35 motion. Although this court found that Blaik's notice of appeal was filed untimely, it nevertheless remanded the case to the district court for a determination of excusable neglect. *United States v. Blaik,* No. 93-8214 (11th Cir. July 27, 1993) (per curiam). In a motion in district court for a finding of excusable neglect, Blaik's public defender explained his error in calculating the requisite ten-day period under Federal Rule of Appellate

---

[3]This motion was filed under the former version of Rule 35(a), which governed offenses committed prior to November 1, 1987, and provided that "[t]he court may correct an illegal sentence at any time." *See United States v. Jordan,* 915 F.2d 622, 624 (11th Cir.1990), *cert. denied,* 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991).

Procedure 4(b) for filing an appeal from the district court's denial of Blaik's Rule 35 motion and also

argued that Blaik's restitution was unlawful under *Hughey*.[4]   Finding that Blaik's counsel's

---

[4]Following our remand for a finding of excusable neglect, Blaik's attorney gave the following reasons to the district judge in his attempt to persuade the judge not to penalize his client by not reviewing his restitution claim following *Hughey* because of the attorney's failure to file the appeal from the district judge's denial of the Rule 35 motion within the ten-day period required by Federal Rule of Appellate Procedure 4(b):

> Over the past decade undersigned counsel has filed more than seventy cases with the United States Court of Appeals for the Eleventh Circuit. Counsel's general practice is to file a notice of appeal within one or two days of the sentencing hearing in the District Court. Before this case undersigned counsel has never realized that the ten day period enunciated in the Federal Rules of Appellate Procedure is measured differently than the similar ten day periods under the Federal Rules of Criminal Procedure. Because undersigned counsel's usual practice is to file[ ] notices of appeal within one or two days after a sentencing hearing or other order, he never before had to confront the fact that ten days in the Court of Appeals means ten calendar days. Ten days in the District Court excludes weekends. Federal Rules of Criminal Procedure 45(a). *It is therefore clear that counsel's mistake is the reason why the notice of appeal was filed four days late. The defendant is not at all to blame for this problem.*

> There is another reason that the notice of appeal was not filed within ten calendar days. After this Court entered its order denying the motion to correct illegal sentence, undersigned counsel had informal consultations with the Assistant United States Attorney previously assigned to this case. Through counsel, the defendant was trying to convince the government that this Court's order was incorrect and that the matter could be resolved by agreement between the parties, after which the defendant would dismiss the notice of appeal. Because the Assistant United States Attorney was out of town for much of that ten day period, and *because undersigned counsel incorrectly believed that the ten day period would exclude weekends and holidays, the notice of appeal was not filed within the requisite ten calendar days as required by Rule 4(b) of the Federal Rules of Appellate Procedure.* It should be noted that the notice of appeal was filed within the ten day period as it would have been calculated under the Federal Rules of Criminal Procedure.

> Defendant submits that there are good grounds as to why the notice of appeal was untimely in this case. Furthermore, *counsel's mistake should not prejudice Mr. Blaik's right to have the restitution issue[ ] resolved by the Court of Appeals. The underlying substantive issue, whether Hughey v. United States is retroactive, and whether it applies to the types of crimes for which Mr. Blaik was sentenced, are important issues that should be resolved. Furthermore, should the Court determine that there are not grounds for excusable neglect, it appears certain that Mr. Blaik would have the right to file an action under 28 U.S.C. § 2255 to vindicate his rights.* Defendant therefore urges this Court to find that there are good grounds as to why the notice of appeal was filed four days late. After such a finding, he then can take the substantive issues to the Court of Appeals.

R1-18-4-6.

explanation for missing the deadline for filing the notice of appeal did not constitute excusable neglect, the district court denied the motion without ruling on the merits of the *Hughey* issue raised therein. This court dismissed Blaik's appeal of the denial of his Rule 35 motion.

Blaik then filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. While he argued that neither the FPA nor the VWPA could have been the basis for the restitution, he also asserted that, if the VWPA was the basis, then *Hughey* made his restitution unlawful. Blaik requested that the restitution component of his sentence be eliminated and that all the restitution that he had paid be reimbursed to him. Alternatively, Blaik contended that he should be permitted to file a late appeal from the denial of his Rule 35 motion based on his counsel's ineffective assistance in failing to file a timely notice of appeal.

In its opposition to Blaik's section 2255 motion, the government contended that the petition was an abuse of the writ, since Blaik had raised the *Hughey* argument in his Rule 35 motion, and the district court had "already addressed the merits of this claim, and ruled against the defendant." R1-26-7. The government further argued that "*Hughey* does not control the restitution order in this case since the counts of the indictment to which the defendant pled guilty outlined his entire scheme to defraud." R1-25-12. The government additionally contended that *Hughey* should not be applied retroactively.

The district court denied Blaik's section 2255 motion. In its order, the district court determined that Blaik's section 2255 motion "possibly constitutes an abuse of the writ because the issue raised in the motion has already been raised by the defendant and has been decided adversely to him by this court." R1-27-2. Significantly, the district court found that Blaik was not prejudiced by his attorney's alleged ineffectiveness in the untimely appeal of the denial of his Rule 35 motion because the motion was meritless and, further, that Blaik's attorney was not ineffective in allowing him to agree to pay restitution in exchange for a lighter incarceration sentence. The district court made the following distinctions between this case and *Hughey:* (1) the entire mail fraud scheme was alleged in the counts to which Blaik pled guilty; (2) Blaik agreed as part of his plea bargain to reimburse all victims of his scheme; (3) *Hughey* does not preclude a defendant from agreeing to pay

restitution as part of a negotiated plea with the government;  and (4) *Hughey* is neither substantive nor procedural as to retroactivity, and Blaik failed to show that there would be any miscarriage of justice by the district court's not applying *Hughey* retroactively.  *Id.* at 2-3.

Blaik appeals the denial of his section 2255 motion.  He pursues his arguments that his restitution is unlawful under the FPA, the VWPA, and *Hughey.*  Because we conclude that the district court abused its discretion in imposing restitution which was unlawful at the time of the plea agreement as well as at sentencing, we need not address Blaik's other issues on appeal that relate to the primary relief that he requests, invalidating his restitution.

## II. ANALYSIS

We review restitution imposed by a district court at sentencing for abuse of discretion.[5]

---

[5]This court has two standards of review for restitution orders, abuse of discretion and *de novo.* The history of these review standards is enlightening.  In *United States v. Lewis,* 743 F.2d 859 (11th Cir.1984), *cert. denied,* 471 U.S. 1067, 105 S.Ct. 2144, 85 L.Ed.2d 500 (1985), "review[ing] the district court's order granting the bank restitution," *id.* at 860, and reversing that restitution order, our court stated:  "Lewis correctly argues and the government concedes that the district court *abused its discretion* in ordering restitution," *id.* at 862 (emphasis added).  In *United States v. Husky,* 924 F.2d 223 (11th Cir.1991), this court reiterated:  "Thus, the issue is whether the district court *abused its discretion* in ordering that [restitution] relief." *Id.* at 225 (emphasis added).  *Husky* has been cited for the abuse-of-discretion review standard for restitution orders by numerous subsequent cases.  *See, e.g. United States v. Twitty,* 107 F.3d 1482, 1493 (11th Cir.1997);  *United States v. Remillong,* 55 F.3d 572, 574 (11th Cir.1995) (per curiam);  *United States v. Apex Roofing of Tallahassee, Inc.,* 49 F.3d 1509, 1512 (11th Cir.1995) (per curiam);  *see also United States v. Fuentes,* 107 F.3d 1515, 1529 (11th Cir.1997) (citing *Remillong* for the abuse-of-discretion review standard for restitution orders).

   Although *Lewis,* decided on October 9, 1984, and *Husky,* decided on February 21, 1991, had established the abuse-of-discretion review standard for restitution orders in this circuit, our court in *United States v. Stone,* 948 F.2d 700 (11th Cir.1991), decided on December 12, 1991, purported to adopt the Ninth Circuit's *de novo* review standard for restitution orders in our circuit:  "We review the legality of a criminal sentence, including an order of restitution, *de novo. United States v. Barany,* 884 F.2d 1255, 1259 (9th Cir.1989), *cert. denied,* 493 U.S. 1034, 110 S.Ct. 755, 107 L.Ed.2d 771 (1990)." *Id.* at 702.  In *United States v. Cobbs,* 967 F.2d 1555 (11th Cir.1992) (per curiam), the panel used the *de novo* review standard for restitution orders engrafted by *Stone, id.* at 1556, and some subsequent cases in our circuit have cited *Cobbs* for the *de novo* review standard for restitution orders, *see, e.g., United States v. Stinson,* 97 F.3d 466, 468 (11th Cir.1996) (per curiam), *cert. denied,* --- U.S. ----, 117 S.Ct. 1007, 136 L.Ed.2d 885 (1997);  *United States v. Lombardo,* 35 F.3d 526, 527 (11th Cir.1994) (per curiam).  This *Stone/Cobbs* line of cases, however, diverges from the established abuse-of-discretion review standard for restitution orders that we use in this opinion and that other recent cases cited above also have used.  Our court needs to address this situation because this circuit currently appears to have two viable review standards for restitution orders.  Given the history of these two review standards, however, we are confident that abuse of

*United States v. Remillong,* 55 F.3d 572, 574 (11th Cir.1995) (per curiam).  In deciding whether

Blaik's restitution was lawful,[6] we must determine the applicable law.  Blaik argues that neither the

FPA nor the VWPA apply and that *Hughey* applies retroactively.  The government contends that

Blaik's restitution is governed by his negotiated plea, which was accepted by the district court and

implemented in his sentence.

Blaik was sentenced on August 8, 1988.  The FPA, which applied only when a convicted

defendant was sentenced to probation, was repealed effective November 1, 1986.  Furthermore, that

statute provided that a probationer "[m]ay be required to make restitution or reparation to aggrieved

---

discretion is the proper review standard for restitution orders.

[6]We have recognized

> that a convicted and sentenced defendant who wishes to challenge his sentencing
> has *several options:*  he may take *direct appeal,* file a *Rule 35 motion* to correct or
> reduce sentence, or file a *section 2255 motion* to vacate sentence. *These courses
> of action are not exclusive one of the other;*  if he acts in time, a defendant may,
> for example, file a Rule 35 motion and then file a direct appeal. [Petitioner]
> availed himself of *all three procedures,* filing a Rule 35 motion, taking direct
> appeal, and then bringing the present section 2255 petition.

*Parks v. United States,* 832 F.2d 1244, 1246 n. 3 (11th Cir.1987) (emphasis added);  *see
Jordan,* 915 F.2d at 626 (same).  We also have differentiated between a Rule 35 motion
and a § 2255 motion:

> In our judgment, however, there is a difference between a collateral attack
> on a particular sentence under Fed.R.Crim.P. 35 or 28 U.S.C.A. § 2255, and a
> direct appeal from multiple count convictions.  With a collateral attack, only a
> specific sentence on a specific count is before the district court.  The narrow
> scope of review on a collateral attack is almost jurisdictional in nature.  The court
> has power only over what is brought before it.

*United States v. Rosen,* 764 F.2d 763, 766 (11th Cir.1985) (per curiam), *cert. denied,* 474
U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986).

*Hughey* was decided after Blaik's direct appeal.  Our court did not have the
opportunity to review the denial of the Blaik's Rule 35 motion substantively because,
procedurally, his attorney failed to perfect a timely appeal.  This is the
ineffective-assistance-of-counsel issue that Blaik raises in his 28 U.S.C. § 2255 motion.
*See United States v. Frazier,* 89 F.3d 1501, 1503 n. 1 (11th Cir.1996) ("We do not
consider Frazier's claim of ineffective assistance of counsel in this direct appeal.  "An
*ineffective assistance of counsel claim is properly raised in a collateral attack on the
conviction under 28 U.S.C. § 2255....*'  *United States v. Butler,* 41 F.3d 1435, 1437 n. 1
(11th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 1987, 131 L.Ed.2d 874 (1995).' "
(emphasis added)).

parties for *actual damages or loss caused by the offense for which conviction was had.*" 18 U.S.C. § 3651 (1982) (emphasis added); *see United States v. Johnson,* 700 F.2d 699, 701 (11th Cir.1983) (per curiam) (construing section 3651, we held that "[t]he amount of restitution cannot exceed the actual losses flowing from the offense for which the defendant has been convicted"). Because Blaik was not sentenced to probation, the FPA is not applicable to his restitution. *See United States v. Snider,* 957 F.2d 703, 706 (9th Cir.1992) (per curiam) (holding that the FPA is inapplicable when a convicted defendant is not sentenced to probation).

Effective January 1, 1983, the VWPA authorized restitution independent of a probation sentence. *United States v. Young,* 953 F.2d 1288, 1289 (11th Cir.1992); *see United States v. Johnson,* 983 F.2d 216, 220 (11th Cir.1993) (citing our cases that consistently have held that restitution may be imposed independently of probation under the VWPA). At the time of Blaik's sentencing, the VWPA provided that "a defendant *convicted of an offense* under this title" may be required to "make restitution to *any victim of such offense.*" 18 U.S.C. § 3663(a) (1988) (emphasis added); *see United States v. Guardino,* 972 F.2d 682, 687 (6th Cir.1992) ("[W]e consider the text of the VWPA and conclude that the plain meaning of pre-1990 amendment section 3663 gives the sentencing court no authority to go beyond the offense of conviction in any situation."). Our court subsequently held that "[t]he amount of restitution under [the VWPA] or [the FPA] may not exceed the actual losses flowing from the offense for which the defendant has been convicted." *United States v. Barnette,* 800 F.2d 1558, 1571 (11th Cir.1986) (per curiam), *cert. denied,* 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987). Where evidence reveals acts in furtherance of a fraudulent scheme that continued after the effective date of the VWPA, a restitution order is authorized under the statute. *Id.*

*Hughey,* decided on May 21, 1990, definitively limited a restitution award under the VWPA to the "loss caused by the specific conduct that is the basis of the offense of conviction."[7] 495 U.S.

---

[7]We need not determine the retroactive application of *Hughey* to decide this case because restitution restricted to the offense of conviction was the law in this circuit under *Barnette* when Blaik was sentenced. *See Hughey,* 495 U.S. at 415 n. 2, 110 S.Ct. at 1982 n. 2 (citing and quoting *Barnette* with approval as to its restriction of restitution to losses from offenses of conviction). Nevertheless, *Stone,* which was remanded by the Supreme Court for this court to

at 413, 110 S.Ct. at 1981. The Court explained "that the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* at 420, 110 S.Ct. at 1984. Effective November 29, 1990, Congress amended the VWPA to permit a district court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3) (Supp. II 1991) (amending 18 U.S.C. § 3663 (1988)); *see United States v. Schrimsher,* 58 F.3d 608, 610 (11th Cir.1995) (per curiam) (applying section 3663(a)(3) to uphold a 1994 plea agreement involving restitution "in an amount greater than the loss relating to the offense of conviction"). This circuit, however, did not apply section 3663(a)(3) retroactively when a plea agreement was executed prior to November 29, 1990, the effective date of the amendment. *Young,* 953 F.2d at 1289-90; *see United States v. Arnold,* 947 F.2d 1236, 1237-38 n. 1 (5th Cir.1991) (per curiam) (acknowledging that application of section 3663(a)(3) retroactively to preexisting plea agreements may invoke the prohibition against *ex post facto* laws).

While we have recognized plea agreements involving restitution between the government and defendants, we have required that such plea agreements be in accordance with the applicable VWPA at the time entered. "Parties to a plea agreement cannot increase the statutory powers of the sentencing judge to authorize restitution simply by stipulating to restitution beyond that allowed under the relevant version of the [VWPA]."[8] *Young,* 953 F.2d at 1290. Thus, "[t]he date of

revisit the restitution order following *Hughey,* suggests that *Hughey* is to be applied retroactively to the limited class of cases where plea agreements were entered into prior to this ruling by the Court and before Congress enacted 18 U.S.C. § 3663(a)(3), effective November 29, 1990. *See Stone,* 948 F.2d at 701. We further agree with the Sixth Circuit that *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), "does not bar the retroactive application of *Hughey* because, unlike *Teague, Hughey* did not announce a new constitutional rule but merely interpreted a statute, and, again unlike *Teague, Hughey* did not involve an attack on a conviction but only on a sentence." *Guardino,* 972 F.2d at 688 n. 7.

[8]We do not address restitution in this case beyond the crimes to which Blaik pled guilty. While other circuits have honored plea agreements entered into before *Hughey* when the plea agreements did provide for restitution in excess of the crimes of conviction on the basis of the plea bargain, *see United States v. Rice,* 954 F.2d 40, 43-44 (2d Cir.1992); *United States v. Marsh,* 932 F.2d 710, 711-13 (8th Cir.1991) (plurality opinion), this court has rejected that rationale, *Young,* 953 F.2d at 1290 & n. 2. *Accord Guardino,* 972 F.2d at 687-88; *United States v. Braslawsky,* 951 F.2d 149, 151-52 (7th Cir.1991); *Snider,* 957 F.2d at 705-07; *United States v. Cockerham,* 919 F.2d 286, 288 n. 2 (5th Cir.1990). Although we suggested in *dicta* in *Stone,* where restitution was not part of the plea agreement, that a defendant could agree to pay restitution in a plea agreement to all victims in the indictment while pleading guilty only to

sentencing ... determines the applicable law." *Guardino,* 972 F.2d at 687; *see Hughey,* 495 U.S. at 413 n. 1, 110 S.Ct. at 1981 n. 1 (using the VWPA "restitution provisions in effect at the time of petitioner's sentencing"); *United States v. Cobbs,* 967 F.2d 1555, 1558 (11th Cir.1992) (per curiam) (applying the VWPA restitution provisions at the time of sentencing). Rejecting the government's argument and the district court's rationale that the plea bargain governs notwithstanding the applicable VWPA, the Ninth Circuit, in a similar case, differentiated the restitution component of a sentence as being a "criminal penalty, not a civil remedy" or a monetary settlement for civil damages analyzed under contract law: "Restitution, as a criminal punishment, is subject to the general rule that plea agreements do not provide authority for a sentencing court to impose punishment in excess of the maximum provided by statute."[9] *Snider,* 957 F.2d at 707; *see United*

---

indictment counts that did not involve all the victims, as the Eighth Circuit upheld in *Marsh,* we rejected this view when the issue was presented directly in *Young,* which specifically held that restitution in a plea agreement is limited to the crimes of conviction under *Hughey.* *Compare Young,* 953 F.2d at 1290 n. 2 *with Stone,* 948 F.2d at 704 & n. 5.

[9] In his concurrence, Judge Godbold questions whether a federal convict on parole may challenge the restitution portion of his sentence in a § 2255 motion. Supporting authority exists for his position in other circuits. *See Smullen v. United States,* 94 F.3d 20, 25-26 (1st Cir.1996); *United States v. Watroba,* 56 F.3d 28, 29 (6th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 269, 133 L.Ed.2d 191 (1995); *United States v. Segler,* 37 F.3d 1131, 1136-37 (5th Cir.1994); *accord United States v. Gaudet,* 81 F.3d 585, 592 (5th Cir.1996). These cases stand for the proposition that a sentenced federal convict must be serving the custodial portion of his sentence to obtain relief under § 2255 and that solely a challenge to the restitution portion of a sentence after the custodial term has expired is insufficient to satisfy the confinement on liberty required for a § 2255 motion. In *Smullen,* the Court's decision in *Hughey* rendered the restitution, ordered for the entire financial loss for false statements submitted to the Department of Labor over the eight-year duration of Smullen's fraudulent scheme rather than the three years represented in his counts of conviction, to be unlawful. The First Circuit recognized that the attorney's failure to have addressed this issue with the sentencing court might have been ineffective assistance of counsel. *See Smullen,* 94 F.3d at 24, 25 ("If Smullen's restitution obligation exceeds the maximum amount which the law permits, there may be a reasonable probability that counsel's failure to point this out contributed to the unfavorable outcome.... As noted, this [difference in restitution ordered and counts of conviction] might be attributed to the ineffective assistance of counsel where, as here, counsel not only did not point out the relevant law to the district judge, but apparently agreed with the prosecution's erroneous interpretation."). Nevertheless, the First Circuit determined that it was "powerless" to grant Smullen relief under a literal reading of § 2255 and its precedent, *United States v. Michaud,* 901 F.2d 5 (1st Cir.1990), which held: " "A monetary fine is not a sufficient restraint on liberty to meet the "in custody" requirement for § 2255 purposes[;][n]or does potential future incarceration for failure to pay such a fine provide the requisite subject matter jurisdiction.' " *Smullen,* 94 F.3d at 25 (quoting *Michaud,* 901 F.2d at 7) (alteration in original). *Watroba* and *Segler* with the same literal reading of § 2255 hold similarly and are cited with approval in *Smullen. Id.*

*States v. Bennett,* 943 F.2d 738, 739 (7th Cir.1991) ("The district court could not exceed the

sentencing authority of the VWPA simply because the government and defendant entered into a

---

Not only are these cases nonbinding authority, but also they are in contravention with Supreme Court and our circuit law. The Court's "interpretation of the "in custody' language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus." *Maleng v. Cook,* 490 U.S. 488, 491, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (per curiam). A prisoner placed on parole is "still "in custody' under his unexpired sentence" because the "petitioner's release from physical confinement under the sentence in question was not unconditional; instead, it was explicitly conditioned on his reporting regularly to his parole officer, remaining in a particular community, residence, and job, and refraining from certain activities." *Id.* (citing *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)); *see Birdsell v. Alabama,* 834 F.2d 920, 921 (11th Cir.1987) (per curiam) ("The "custody' requirement has also been satisfied by a petitioner on parole, *see, e.g., Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); released on personal recognizance, *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973); or challenging a future, consecutive sentence, *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968)."); *cf. Battle v. Thomas,* 923 F.2d 165, 166 (11th Cir.1991) ("The Supreme Court in *Maleng* excluded from the definition of "in custody' instances in which a petitioner had fully served a former sentence and only suffered from certain collateral consequences of the conviction, such as the inability to hold public office or the possibility that the former sentence would be used to enhance a future sentence"). The Court does require that the broadened definition of custody be satisfied "at the time the [habeas] petition was filed." *Maleng,* 490 U.S. at 492, 109 S.Ct. at 1926; *see Addison v. United States,* 589 F.2d 252, 252, 253 (5th Cir.1979) (per curiam) (holding that § 2255 petition filed "one day before he was released from parole" correctly was entertained by the district court because petitioner was " "in custody' " when he filed the petition). Furthermore, we specifically have recognized that restitution may be raised in a § 2255 motion. *See United States v. McCarty,* 99 F.3d 383, 386-87 (11th Cir.1996) (per curiam) (citing *United States v. Stumpf,* 900 F.2d 842, 844-45 (5th Cir.1990)).

On August 8, 1988, Blaik was sentenced to consecutive five-year terms in custody on each of the two counts to which he pled guilty, and he was sentenced to pay $51,627.88 in restitution, which was a "discrete part of his sentence." *United States v. Gifford,* 90 F.3d 160, 162 (6th Cir.1996). At the time that he filed his § 2255 petition on February 2, 1994, Blaik was and currently is on parole for the remainder of his ten-year custodial sentence. Thus, the custodial requirement was satisfied under § 2255. Moreover, *Hughey* was decided after Blaik was sentenced, which precluded this issue on direct appeal, and his attorney failed to perfect a timely appeal from the denial of his Rule 35 motion, which raised the invalidity of Blaik's restitution because of *Hughey* and resulted in this ineffective-assistance-of-counsel issue in his § 2255 motion. Because of his counsel's procedural default, Blaik's § 2255 motion is the first opportunity for this court to address the merits of his contention that his restitution is unlawful under *Hughey* in the context of his ineffective-assistance-of-counsel claim. Additionally, Blaik's counsel's failure to adhere to a procedural time limit for filing the Rule 35 motion fell below an objective standard of reasonable performance because proper presentation of the *Hughey* claim should have reduced Blaik's restitution to the counts of conviction thereby changing the result of his sentence, which meets the two-part test for ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

non-binding plea agreement to that effect.").

In this case, Blaik executed his negotiated plea on June 7, 1988. He pled guilty to Counts 1 and 2 of the indictment and agreed to pay restitution to the thirty victims named in the indictment in the amount of their losses.[10] Despite the fact that the two instances of mail fraud to which Blaik pled guilty occurred in 1982, his restitution, imposed at his sentencing on August 8, 1988, is governed by the VWPA, the only authority for restitution after the repeal of the FPA. *See Guardino,* 972 F.2d at 687 ("[P]rior to the amendment, [18 U.S.C. § 3663(a)(3),] courts were not permitted to order such restitution."); *Snider,* 957 F.2d at 706 ("Federal courts have no inherent power to order restitution."). The relevant version of the VWPA permitted restitution for a defendant "convicted

---

[10]Our examination of the indictment in this case reveals an apparent, albeit unwitting, misrepresentation by the government upon which the district court relied. Blaik's indictment is organized in paragraphs numbered I-V. Under Paragraph V, the thirty victims of Blaik's fraudulent scheme are listed, and each act of mail fraud, or the mailing of marketing correspondence to each victim, is designated as a separate "count." Additionally, the indictment is entitled, "*COUNTS* ONE THROUGH THIRTY." Original R1-1 (emphasis added). Thus, Counts 1 and 2 of the indictment are two instances of mail fraud that occurred on September 30, 1982, and December 12, 1982, respectively.

In contrast, Paragraphs I-IV provide background information regarding Blaik's fraudulent scheme. Paragraph II gives the complete duration of his mail fraud from September 30, 1982, the mail fraud act in Count 1, until February 4, 1985, the mail fraud act in Count 30. It appears that it was this Paragraph II, rather than Count 2, that the government relied upon in representing to the district court that the entire mail fraud scheme was charged in the counts to which Blaik pled guilty.

In *Stone,* which involved a 103-count indictment, the defendant pled guilty under a plea agreement to Count 81 only. Similar to the second paragraph of the indictment in this case, Count 1 of the indictment in *Stone* described the entire mail fraud, credit card scheme that existed from April, 1985 to January, 1987. *Stone,* 948 F.2d at 701. The defendant in *Stone,* however, did not plead guilty to this count. Instead, that defendant pled guilty pursuant to a plea agreement to Count 81, which charged mail fraud on a specific company. Following *Hughey,* this court held that the district court erroneously ordered restitution that included financial losses to victims other than the company in Count 81, the only count of conviction. *Id.* at 704; *see United States v. Jewett,* 978 F.2d 248, 252 (6th Cir.1992) ("The "specific conduct' for which [the defendant] was convicted was mail fraud, not executing a fraudulent scheme."); *United States v. Sharp,* 941 F.2d 811, 815 (9th Cir.1991) ("[T]he presence of a scheme .... is too fine a point on which to distinguish *Hughey,* particularly since the indictment in *Hughey* also alleged a scheme."). *But see United States v. Stouffer,* 986 F.2d 916, 928-29 (5th Cir.) (upholding restitution to all victims irrespective of the counts of conviction under the rationale that all losses caused by a fraudulent scheme satisfy the specific conduct requirement of *Hughey* ), *cert. denied,* 510 U.S. 837, 114 S.Ct. 115, 126 L.Ed.2d 80, *and cert. denied,* 510 U.S. 919, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993); *United States v. Brothers,* 955 F.2d 493, 497 (7th Cir.) (same), *cert. denied,* 506 U.S. 847, 113 S.Ct. 142, 121 L.Ed.2d 94 (1992).

of an offense" for "any victim of such offense." 18 U.S.C. § 3663(a) (1988); *see Guardino,* 972 F.2d at 687 ("This language establishes the general principle for restitution orders, and no other provision carves out an exception based on a plea agreement."). Additionally, *Barnette,* which had been the law of our circuit since 1986 and was a precursor of *Hughey,* clearly restricted restitution to losses resulting from the offenses of conviction and should have informed the parties to the plea agreement as well as the district court that restitution was available only for crimes of conviction.[11] *Barnette,* 800 F.2d at 1571; *see Young,* 953 F.2d at 1289-90 (remanding for resentencing because restitution ordered pursuant to the plea agreement did not limit repayment to victims of crimes of conviction in compliance with *Hughey* ). Therefore, when it was executed, Blaik's plea agreement violated the relevant VWPA and the law of our circuit in *Barnette.*[12] Accordingly, the district court

---

[11]Without any recognition of the relevant version of the VWPA or *Barnette,* both of which controlled restitution at the time of Blaik's sentencing, the district court, in its order denying Blaik's § 2255 motion, distinguished *Hughey* on the basis of the negotiated plea:

> *Hughey* ruled simply that the Victim and Witness Protection Act, 18 U.S.C. §§ 3579, 3580, did not authorize the imposition of restitution for acts other than those underlying the offense of conviction. However, in the instant case, the entire mail fraud scheme was alleged in the counts to which the defendant pled guilty, and, most importantly, the defendant agreed as part of the plea bargain to reimburse all victims of his scheme. There was no such agreement in *Hughey.*

R1-27-2; *see Rice,* 954 F.2d at 43 (recognizing that "a plea agreement obviously could not authorize a judge to impose whatever punishment the government and the defendant agreed to"). In *Young,* our court made clear that plea agreements must comply with *Hughey* prior to the amendment of the VWPA in § 3663(a)(3), which became effective on November 29, 1990. Additionally, Blaik's *Hughey* argument was not an abuse of the writ because this issue was not addressed on the merits by the district court or our court in respectively denying and dismissing Blaik's Rule 35 motion. *See Potts v. Zant,* 638 F.2d 727, 740 (5th Cir. Unit B Feb.) (recognizing that abuse of the writ does not arise when there has not been a "determination on the merits" or where "there has been an intervening change in the law"), *cert. denied,* 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981).

[12]Neither the government nor Blaik's counsel appeared to have been aware of *Barnette* and its holding at sentencing or on direct appeal because neither cited it to the district court. Blaik, the defendant, should not be detrimented or effectively punished for this oversight concerning the law of our circuit. While the significance of *Barnette,* is to show that the plea agreement was unlawful and invalid when the parties agreed to it as well as when it was implemented at sentencing, the issue presented on appeal is not *Barnette* but the impact on the plea agreement and Blaik's resulting sentence of the Supreme Court's decision in *Hughey.* Since Blaik was sentenced on August 8, 1988, and *Hughey* was not decided until May 21, 1990, this case could not have been raised at his sentencing or on direct appeal and was the appropriate basis for his Blaik's Rule 35 motion. *See Callanan v. United States,* 364 U.S. 587, 589 n. 3, 81 S.Ct. 321, 322

erred when it based Blaik's restitution on the invalid plea agreement and denied his section 2255 motion for the same reason.[13] *See Guardino,* 972 F.2d at 688 ("[T]he version of the VWPA in effect prior to the November 1990 amendment does not authorize a district court, in reliance on a plea agreement, to order restitution for counts other than the counts of conviction.").

Because Blaik received the maximum sentence on the two counts to which he pled guilty, resentencing is not an option in this case.[14] *United States v. Fuentes,* 991 F.2d 700, 702 n. 3 (11th

---

n. 3, 5 L.Ed.2d 312 (1961) "Rule 35 is available to correct an illegal sentence when the claim is based on the face of the indictment even if such claim had not been raised on direct appeal." (citing *Heflin v. United States,* 358 U.S. 415, 418, 422, 79 S.Ct. 451, 453, 455, 3 L.Ed.2d 407 (1959)). The problem, however, is that the effect of *Hughey* on Blaik's restitution was not addressed on the merits by the district court or, consequently, this court because of counsel's failure to perfect a timely appeal. Nevertheless, *Hughey,* which appears to have retroactive effect, makes clear that Blaik's plea bargain and sentence as to restitution, including counts for which he was not convicted, were unlawful.

> This court has held that we will not entertain an appeal based on a challenge to the sentence when an objection was not raised at sentencing unless " "manifest injustice' " will result. *United States v. Milano,* 32 F.3d 1499, 1503 (11th Cir.1994) (quoting *United States v. Jones,* 899 F.2d 1097, 1103 (11th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990)). Because *Hughey* confirms the holding in *Barnette* that restitution cannot be ordered for counts of which a defendant was not convicted and the substantial difference in the restitution amounts ($3,000.00 for the two counts of conviction as opposed to $51,623.88 ordered for all counts), manifest injustice will result if we do not correct the restitution order in this case. *See Gifford,* 90 F.3d at 163 (reversing the district court's order requiring that the convicted defendant pay restitution in excess of the counts of conviction and citing *Hughey* ).

[13]In denying Blaik's section 2255 motion, the district court said that it "entered sentence pursuant to the plea agreement and ordered restitution to all 30 victims." R1-27-1.

[14]In contrast, under the plea agreement in *Young,* the defendant received less incarceration time on the two counts on which he was convicted in exchange for paying more restitution. Recognizing that the "plea agreement essentially reduced the period of incarceration in return for Young's promise to make greater restitution" as part of the overall "sentencing plan," we enabled the district court at resentencing "to restructure its sentences on the two counts of bribery in order to approximate its intention for the original sentence," given its inability "to order significant restitution." *Young,* 953 F.2d at 1290. Thus, we could preserve for the government an opportunity to retain some benefit for its plea bargain. In that case, we were able to avoid an inequitable result for the government: "Having promised that he would repay any amount deemed appropriate "in order to induce sentencing leniency, [Young should] not retain the resulting benefits while retracting the undertaking on which the sentencing court has relied.' " *Id.* (citation omitted).

> Regrettably, in this case, like *United States v. Fuentes,* 991 F.2d 700 (11th Cir.1993) (per curiam), resentencing would serve no purpose, since Blaik received the maximum sentence on the counts of his conviction. *Id.* at 702 n. 3. Absent a parole violation, a separate offense, there is no opportunity to give him more incarceration time

Cir.1993) (per curiam). Our result is mandated by *Fuentes* and *Young*. We reverse the district court's denial of Blaik's section 2255 motion and vacate his restitution in excess of $3,000.00, the amount involved in the two mail fraud counts to which he pled guilty. On remand, the district court must correct his restitution and determine the amount of restitution that Blaik has paid. Any restitution that he has paid in excess of $3,000.00 must be reimbursed to him.

### III. CONCLUSION

In this section 2255 appeal, Blaik argues that the restitution portion of his sentence for two mail fraud counts to which he pled guilty is unlawful. As we have explained herein, we agree. Accordingly, the district court's denial of Blaik's section 2255 motion is REVERSED, and the restitution portion of his sentence is VACATED and reduced to $3,000.00. We REMAND for the district court to correct Blaik's restitution amount to $3,000.00 and to determine if Blaik has paid restitution in excess of $3,000.00, which amount must be refunded to him.

GODBOLD, Senior Circuit Judge, Concurring *Dubitante*:

I concur in the result reached in Judge Birch's opinion for the court. In doing so, however, I express my doubts whether a person on parole may challenge only the restitution portion of his sentence by a § 2255 motion. For collateral relief purposes a prisoner on parole is "in custody". But Blaik does not seek release from parole, only a diminution of his monetary obligation to make

---

for the crimes of conviction. Blaik received a substantially more lenient sentence in exchange for agreeing to pay restitution to all thirty victims of his fraudulent scheme. By pleading guilty to two counts of mail fraud, each with a maximum imprisonment term of five years, Blaik reduced his sentencing exposure to only ten years of imprisonment. *See* 18 U.S.C. § 1341. Since this was a Sentencing Guidelines case, Blaik's sentence potentially could have been 150 years if he had proceeded to trial and had been convicted on all thirty counts of the indictment.

Following its conclusive investigation, complete with victims' monetary losses, the government would have had a strong case against Blaik had it proceeded to trial. Blaik apparently agreed or he would not have pled guilty, which he obviously did to avoid a significant term of imprisonment. While the government has lost the benefit of its plea bargain, which principally was restitution to the victims, it should have been aware at the time of entering into the negotiated plea that the VWPA and *Barnette* limited restitution to crimes of conviction. *See United States v. Baugh,* 787 F.2d 1131, 1133 (7th Cir.1986) (per curiam) ("A prosecutor has absolutely no authority to negotiate for or secure a sentence that exceeds the statutory maximum for the offense of which the defendant will be convicted.").

restitution. There is substantial authority that § 2255 is not available for this purpose. Section 2255 itself speaks of a prisoner's "claiming the right to be released." See also *U.S. v. Watroba,* 56 F.3d 28, 29 (6th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 269, 133 L.Ed.2d 191 (1995); *U.S. v. Gaudet,* 81 F.3d 585, 592 (5th Cir. 1996); *Smullen v. U.S.,* 94 F.3d 20 (1st Cir. 1996). This court has recognized that the custody requirement is satisfied by a petitioner who is on parole. *Birdsell v. Alabama,* 834 F.2d 920, 921 (11th Cir. 1987); *Battle v. Thomas,* 923 F.2d 165, 166 (11th Cir. 1991). But in neither of these cases was the defendant challenging a restitution order.